Sale v. Eichberg.

SALE v. EICHBERG.

(Jackson. May 24, 1900.)

1. RES ADJUDICATA. General rule stated.

The general rule is that the estoppel of a judgment or decree extends to all matters material to the decision of the cause which the parties, exercising reasonable diligence, might have brought forward at the time. The rule requires the whole subject of litigation to be brought forward by the parties, and the judgment concludes all matters, whether of action or defense, legally pertaining to that subject which, by the exercise of reasonable diligence, might have been brought forward. (Post, pp. 337, 338.)

Cases cited: Thompson v. Blanchard, 2 Lea, 531; Boyd v. Robinson, 93 Tenn., 2.

2. SAME. What is not.

A judgment obtained by a physician against his patient for professional services does not bar an action by the patient against the physician for damages caused by malpractice in the performance of such services, especially where the judgment was rendered upon enforced confession as a condition to the issuance of an injunction to prevent its use as a defense in the malpractice action. (Post, pp. 338–351.)

3. JURISDICTION. Amount.

In an action appealed from a Justice of the Peace, the jurisdiction of the Circuit Court is limited to the amount of the Justice's jurisdiction, both as to matters of claim or action, and as to matters of set-off or cross actions. (Post, p. 346.)

4. WITNESS. Use of scientific works on cross-examination of expert.

It is not error for the Court to permit counsel, as a means of testing the knowledge and accuracy of an expert witness, to read from standard works on the subject under investigation, and ask him whether he agreed with the views therein expressed. (Post, pp. 351, 352.)

Case cited: Byers v. Railroad, 94 Tenn., 350.

Sale *v.* Eichberg.

5. DAMAGES.　*Charge as to compensatory.*

  In charging that plaintiff is entitled to compensation for his injury, it is misleading for the Court to use the words, "full, complete, and ample," as qualifying the compensation to be given by the jury.　(*Post, p. 352.*)

FROM SHELBY.

Appeal in error from the Circuit Court of Shelby County.　L. H. ESTES, J.

McFARLAND & NEBLETT and HENRY CRAFT for Sale.

EDGINGTON & EDGINGTON for Eichberg.

McALISTER, J.　Wm. L. Eichberg recovered a verdict and judgment in the Circuit Court against Dr. E. Paul Sale in an action for damages for malpractice.

Dr. Sale appealed and has assigned errors. The record discloses that on the 19th of July, 1898, Dr. Sale recovered a judgment before a Justice of the Peace of Shelby County for the sum of thirty-five dollars for services rendered Eichberg in the treatment of his arm.

Sale appealed to the Second Circuit Court. It further appears that on the next day, to wit, the 20th day of July, 1898, Eichberg commenced this action against Dr. Sale in the First Circuit Court

Sale *v.* Eichberg.

of Shelby County, to recover damages alleged to have been sustained in consequence of the maltreatment of his arm by Dr. Sale.

On the 14th of January, 1899, Eichberg, alleging various grounds, filed his bill in the Chancery Court of Shelby County to enjoin Dr. Sale against prosecuting his suit in the Second Circuit Court to recover his fees. The Chancellor granted an injunction upon the condition that Eichberg confess judgment for the amount claimed by Dr. Sale for professional services, and then in his fiat enjoined the judgment thus to be confessed. Counsel for Dr. Sale demurred to the bill. This demurrer was overruled, from which action counsel for Dr. Sale appealed to this Court. At the April term, 1899, the decree of the Chancellor was reversed and the cause remanded for further proceedings, the Court decreeing that "matters should stand just as they were before the injunction was sued out."

Thereupon the counsel for Dr. Sale pleaded in the present cause, first, the general issue, and, second, as *res adjudicata* the judgment confessed by Eichberg for the sum of thirty-five dollars, as directed in the fiat of the Chancellor. It should be stated that the chancery proceedings are still pending, and no further steps appear to have been taken in said cause since it was remanded by this Court.

It is assigned as error that the Court left the jury

to determine from the evidence what questions were involved in the cause of *Sale* v. *Eichberg* in the Second Circuit Court, wherein Eichberg confessed judgment. It is also assigned as error in this connection that the Court charged the jury that unless, as matter of fact, Eichberg made a claim in that cause for improper or negligent treatment, such as he was making in this cause, Eichberg was not estopped from recovering. It is also insisted the Court erred in refusing the following instruction submitted by counsel for Dr. Sale, to wit: "If you find from the evidence that the services for which suit was brought before the Justice of the Peace and upon which judgment was recovered by confession in the Circuit Court of Shelby County, were the services performed by Dr. Sale in attention to the arm of plaintiff and were the same services which are complained of in this suit as having been negligently and improperly performed and for which damages are claimed in this suit, that then the confession of the judgment in the Circuit Court is a bar to to recovery in this suit, and that upon such bar their verdict should be for defendant."

It is insisted on behalf of plaintiff in error that the merits of the two suits involved the single question, whether Dr. Sale's services had been such as a competent surgeon of ordinary skill and ability should have rendered. It is argued that when Eichberg confessed judgment for

the amount of the account he confessed that the
services had been such as claimed, and that he
could not relitigate that question in the present
suit and claim that the services were so negli-
gently and ignorantly rendered as to amount to
malpractice. It is said that as a matter of fact
the services rendered were not such as a surgeon
of ordinary skill and ability would have rendered,
and, in consequence thereof, Eichberg suffered in-
jury; this afforded him a complete defense to
Sale's action upon the account, and, further, that
by way of cross action he could have set up his
claim for damages. Therefore it is insisted that
the suit of *Sale* v. *Eichberg* on the account em-
braced the whole subject at issue between the
parties, and that the confessed judgment therein is
final and conclusive of this case. Counsel cite in
support of his position *Thompson* v. *Blanchard,* 2
Lea, 531, viz.: "The estoppel of a judgment or
decree extends to all matters material to the decis-
ion of the cause which the parties, exercising
reasonable diligence, might have brought forward at
the time. The question then is, Was the question
of whether these legacies were special or general
directly involved in the former suit? We are
compelled to say it was. The defendant might
have insisted that they were general legacies, and
if the Court had so held the land could not have
been sold."

In the case of *Beloit* v. *Morgan,* 7 Wallace,

623, the Supreme Court of the United States says: "In deciding this question I believe I state the rule of the Court correctly, that where a given matter becomes the subject of litigation in, and of adjudication by, a Court of competent jurisdiction, the Court requires the parties to bring forward their whole case, and will not, except under special circumstances, permit the same parties to open the same subject of litigation in respect of a matter which might have been brought forward as a part of the subject in contest, but which was not brought forward only because they have, from negligence, inadvertence, or even accident, omitted a part of their case. The plea of *res adjudicata* applies, except in special cases, not only to the points upon which the Court was required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.

"A party can no more split up defenses than indivisible demands, and present them by piecemeal in successive suits growing out of the same transaction."

The last case was cited with approval by this Court in *Boyd* v. *Robinson,* 9th Pickle, 2, and the same rule announced. Counsel then cite cases to show that this rule has been applied in actions against surgeons and physicians to recover damages.

for malpractice. In *Bellinger* v. *Craigen,* 31 Bar-
bour, 534, "a patient claimed damages from a
physician on account of alleged malpractice. The
physician denied the allegations and answered, es-
pecially alleging negligence on the part of the pa-
tient. After issue was joined the physician sued the
patient before a Justice of the Peace for the value of
services rendered. The patient denied the allegations
in the complaint, and also averred that the services
were so unskillfully performed that they were of
no value, but on the trial he was allowed to with-
draw such answer and all claim and defense
founded upon any want of care in the physician,
over the objection of the physician, who got a
judgment for the value of the services. The phy-
sician's contention in the action for malpractice,
therefore, was that the patient's right to recover
damages was barred by the recovery in the Jus-
tice's Court. The Court upheld his contention
upon the ground that the judgment of a compe-
tent Court was not only conclusive on all questions
actually and formally litigated, but as to all ques-
tions within the issue, whether formally litigated
or not.

"The Court pointed out that the law implies a
promise on the part of the surgeon, that he has
ordinary skill and ability, and that he will exe-
cute the business intrusted to him with ordinary
care and skill; and if he fails in his duty, he
is guilty of default in his undertaking, and cannot

collect the pay for his services, but is liable in damages to the person who employed him; and, further, that the contract was entire, and that performance was necessary in order to entitle him to recover; and it further pointed out that in such cases the burden of the proof was cast upon the defendant to disprove the allegation of performance in such a complaint, and that if he neglected to offer any such proof, that fact of performance was presumed, and necessarily must be so in order to authorize the physician to recover for his services.

"In *Blair* v. *Bartlett,* 75 N. Y., 150 (Am. Rep. 455), the Court stated that it must be considered as settled in that State, that a judgment in favor of a physician and surgeon for his professional services, rendered by a Court of competent jurisdiction, in an action where the defendant appeared and confessed judgment for the amount of the services, is a bar to an action by the defendant against that physician and surgeon for malpractice in rendering those services. The Court cited and approved *Bellinger* v. *Craigen,* supra, and *Gates* v. *Preston,* 41 N. Y., 131.

"In the case of *Gates* v. *Preston,* supra, action was brought against a surgeon, and subsequent to the commencement thereof, and after answer by him, he commenced an action and recovered his fees upon a written confession of judgment signed by the patient in open Court. It was held that

such judgment barred the patient from recovering damages for malpractice. The Court said that in a case where the judgment was upon confession, the right of action was by implication admitted, and that in such a case the express and direct admission of the right to recover, and the consent to the entry of a judgment, was an admission on the record of all the facts which the surgeon would have been bound to prove on a trial of the cause of action alleged by him in his complaint." *Dunham* v. *Bower,* 77 N. Y., 76; 1 Herman Estop. sec. 235.

"In *Howell* v. *Goodrich,* 69 Ill., 556, action was brought against a surgeon for alleged malpractice. The defense of *res adjudicata* was interposed, the plea showing the recovery by the surgeon of a judgment for his fees. The plea was sustained. In this case, however, the defense of malpractice had been set up in the former suit by the physician to recover his fees, in which judgment was rendered in the physician's favor, the Court finding there was no malpractice."

"In *Haynes* v. *Ordway,* 58 N. H., 167, it was held that a judgment in favor of a physician in a suit against him for malpractice bars the defense of malpractice in an action by him for his fees."

"In *Goble* v. *Dillon,* 86 Ind., 327 (44 Am. Rep., 308), which was an action for damages against two physicians for malpractice, one filed a

plea showing that he had recovered judgment for his fees. His plea was sustained. The Court pointed out in its opinion that the matters in issue in the two cases were the same—namely, the character and value of the services rendered by the physician—and that in the suit by the physician against the patient evidence that the treatment was unskillful and negligent would have defeated the action, while, on the other hand, in a suit by the patient against the physician, evidence that the treatment was skillful and proper would have defeated the action. And that although the object of the suits might be different, yet by way of evidence, the former judgment must be conclusive."

There is, however, an apparent conflict of authority on this subject, for we find another line of cases which hold that the patient has a remedy, although the physician may have recovered a judgment for his fees, but in most, if not all, of this class of cases the judgment was by default, and not confessed nor upon the merits. Thus in *Ressequie* v. *Bowers,* 52 Wis., 650, "which was an action for damages for malpractice, the defendant set up in bar a judgment recovered by him for the same services in a Justice's Court upon default, but the Court held such judgment did not bar the plaintiff's right of action for damages for malpractice, upon the ground that the question had not been litigated in the action before the Jus-

tice." So in *Sykes* v. *Bonner,* 1 Cin. Sup. Ct. Rep., 464, it appeared that a judgment had been rendered against a physician for malpractice. A new trial having been granted, the physician brought suit for his fees and obtained judgment by default, which he pleaded as a defense upon the second trial of the suit for malpractice. It was held that the plea was no bar in that action, as the judgment he had obtained for his fees was by default.

In the case of *Lawson* v. *Conway,* 37 West Va., 159, the Court, after reviewing the authorities, said, viz.:

"I think a safe conclusion to be reached is that if the physician sue for compensation for his services, and there is no appearance by the patient, a recovery by the former does not estop the latter from bringing his cross action for malpractice; but if he appear (unless the record show that it was not to defend, but solely to disclaim the waiver of his own right), he is estopped by the recovery. . . . And if the patient has appeared in the suit by the physician, he was bound to make all the defenses he had, and hence he is estopped by the fact that he had a defense of malpractice, of which he failed to avail himself. But if he has not appeared, then the question of malpractice has never been adjudicated, and he is at liberty to assert his claim by independent action."

In *Goble* v. *Dillon,* supra, "the Court recognized the distinction taken in *Ressequie* v. *Bowers,* 52 Wis., between cases in which the judgment had been rendered by default and those in which the Court has given judgment upon the merits, and held that if the action in which the physician recovered his services had been undefended, the judgment recovered in it could be no defense in an action by the patient for malpractice."

The last case on this subject to which our attention has been called, is *Jordahl* v. *Berry,* 72 Minn., 119, and reported in 45 Lawyers' Reports Annotated, 541, with an able and elaborate note, which we have found highly instructive in the examination of the subject. The syllabus of that case is that a judgment by default 'in an action by a physician against his patient to recover for professional services, is not a bar to an action by the patient against the physician for damages caused by malpractice in the performance of such services. The Court in that case dissented from the New York rule, and was of opinion the other view was safer, more convenient, and more equitable in practice.

Judge Mitchell, the writer, stated that the conflict of opinion among the Courts gave rise to an extended and somewhat energetic dispute among text-writers. Mr. Bigelow discusses the subject at some length, and earnestly insists that the New York doctrine is wrong. Estoppel, page 174. Mr.

Sale *v.* Eichberg.

Van Vleet takes the same side of the question. Former Adjudication, Sec. 168. Mr. Black, while not discussing the matter at any great length, indorses the doctrine opposed to that of New York as being much better supported by legal reason and the best considerations of convenience and justice. 2 Black on Judgments, Sec. 769. Mr. Brown, in his note to *Ressequie* v. *Bowers,* 52 Wis., 650, says of the New York doctrine, that while unquestionably right in theory, it may well be doubted whether it is convenient or safe in practice; that such estoppels are odious at best, and are founded on a technicality, and probably promote more injustice than they prevent.

On the other side Mr. Herman urges with great earnestness that the New York doctrine is sound, and the Courts which have come to an opposite conclusion violate every principle upon which the doctrine of *res adjudicata* is founded. Estoppel and Res Adjudicata, Sec. 231 *et seq.*

The writer does say in the course of that opinion, illustrating the injustice of the New York rule, "if plaintiff had appeared and defended the action brought by the physician for his fee, he would have been put to the alternative of alleging the malpractice as a mere defense, or of setting it up as a cross claim. In either case the judgment would be a bar or estoppel on that issue. If he had adopted the latter course, he could only have recovered one hundred dollars, the limit

of the Justice's jurisdiction, and could never have recovered any more in another suit, because he would not be allowed to split a single cause of action. On the other hand, had he set up the malpractice merely as a defense, and the claim of defendant for services was less than fifteen dollars, the issue involving a claim of $5,000 would have been conclusively determined by the judgment of the Justice," etc.

Counsel for Dr. Sale, in criticizing this case, say Eichberg was not hampered by any question of Justice's jurisdiction, that his case was in the Second Circuit Court, where he could in a cross action have recovered whatever a jury might have given him. But in this position counsel is mistaken. The case having originated before a Justice of the Peace, the Circuit Court, in trying the cause on appeal, would be limited to the same jurisdiction, as to amount, that limited the Justice of the Peace, to wit, five hundred dollars.

An illustration given by the Minnesota Court demonstrates how utterly impracticable, as well as inequitable, the New York rule necessarily is.

An examination of the two classes of cases cited will show that they are distinguishable in this important attribute—that where judgment is by default no estoppel arises, but where there is a judgment on the merits, or a confessed judgment, the matter is *res adjudicala.* In two of the New York cases the defendants appeared and answered,

but afterwards withdrew their answers and permitted judgment to be rendered for plaintiff. In the other case there was a written confession of judgment. In neither of them was there a judgment by default in the usual and ordinary acceptation of that term. But in the other class of cases, in which it is held that the judgment is no bar, there was default made in appearance and defense.

Now, it is insisted in the present case that the judgment in favor of Sale against Eichberg for fees, was a confessed judgment, and, therefore, a bar within the rule recognized in both classes of cases.

Mr. Black says: "A judgment entered upon confession without action is as conclusive as any other judgment, and is equally protected against collateral attack or impeachment; and, like a judgment rendered after a contestation of the merits, it operates as a merger of the cause of action, and while it remains in force the plaintiff cannot maintain an action for the same claim or demand. Black on Judgments, Sec. 698.

"Judgments by confession or consent, if given intelligently and voluntarily, without collusion or fraud, are conclusive." Am. & Eng. Enc. Law, Vol. 21, page 267; *Nashville R. R. Co.* v. *United States,* 113 U. S., 261.

With these definitions and principles in view, we proceed to inquire what is the character of the alleged confessed judgment· upon which the plaintiff

in error relies in this cause as a bar to the suit against him for malpractice. As already stated, Dr. Sale brought his suit for fees in the Justice's Court, on the 19th of July, 1897, and obtained a judgment by default.

Eichberg appealed to the Second Circuit Court. On the next day, to wit, July 20, 1897, Eichberg commenced his suit against Sale for malpractice. It further appears that on the 14th of January, 1899, Eichberg filed the bill already mentioned against Sale, to enjoin the latter's suit for fees pending in the Second Circuit Court. Complainant alleged in that bill the employment of Sale, the maltreatment of the fractured arm and the pendency of the suit for damages in the First Circuit Court, and the suit of Sale for fees in the Second Circuit Court. It was alleged in that bill that when complainant refused longer to submit to Sale's treatment he asked Dr. Sale for his bill and the latter informed him there was nothing due whatever. The bill then proceeds, viz.: "Your orator is advised by his counsel that if the said Sale should obtain a judgment upon the trial of the cause in the Circuit Court, it would be pleaded as a bar by said Sale, which he at once would proceed to do. . . Your orator is without a remedy to extricate himself from the dilemma which this shrewd defendant has placed him in, except to apply to this Honorable Court to compel an election by defendant to try the suit for

damages first, or, in default of such election, if the suit for services is tried first, it will be upon defendant's election to waive his right to rely on any judgment he might obtain, either as evidence of his rights in the suit for damages or as ground for a plea upon which the damage suit might be defeated. Your orator is willing to assent and agree that a judgment may be entered against him for the amount sued for, whether at law in the pending case for services or in this Court in this cause, if the damage suit is decided against him." Complainant prayed for an injunction restraining defendant from further prosecuting his said suit for services until after the suit for damages is tried and disposed of, or that any judgment he may obtain for services shall not operate as evidence for him in said suit for damages, and that he shall not plead or set it up in any manner as a defense to said suit for damages, etc. The following is the fiat of the Chancellor, to wit:

"*To the Clerk and Master of the Chancery Court of Shelby County*:

"Upon the execution by the complainant in the foregoing bill of a bond for costs and an injunction bond in the penalty of one hundred ($100) dollars, conditional as prescribed by law, with good and approved security thereon, and on a confession of judgment by complainant in the

Second Circuit Court, issue a writ of injunction restraining defendant from taking any steps toward a collection of said judgment, or in any way attempting to use same as a defense to complainant's damage suit.

"This 25th day of January, 1899. ,

"LEE THORNTON, *Chancellor.*

"Defendant Eichberg thereupon, in accordance with the directions of said fiat, and in order to, avail himself of the benefit thereof, comes into open Court and waives the jury heretofore demanded, and hereby confesses judgment in favor of plaintiff for the amount sued for of $35.00 debt and $1.00 interest thereon, making the sum of $36.00, together with the costs of these proceedings."

It will thus be seen that the alleged judgment was confessed, under the fiat of the Chancellor, for the very purpose of preventing an estoppel. Complainant, in his bill, denied that he owed Dr. Sale anything for professional services, and to say that he is now estopped by a judgment confessed under the circumstances stated, would be a singular perversion of complainant's acts and intentions plainly expressed. Moreover, the decree of this Court in the injunction suit, rendered at the April term, 1899, reversing the decree of the Chancellor, recited "that matters should stand just as they were before the injunction was sued out." We hold that no such legal anomaly and obliquity

can result from the acts of complainant, and the alleged confessed judgment is no bar to a prosecution of the suit for malpractice. There was no error, therefore, in the charge of the Court on this subject.

The third assignment is that the Court erred in excluding, on cross-examination of Dr. Raymond, one of plaintiff's witnesses, the reading of extracts from the standard work of Dr. Hamilton as to diagnosis and treatment of fractures like that of Eichberg. Counsel stated at the time that, among other grounds, the question was competent to test the experience of the witness and his familiarity with the leading authorities upon that subject. Counsel stated he did not propose to introduce the book itself as evidence, but simply wished to test the witness as an expert, and the accuracy of his opinion and statements. It was held by this Court, in *Byers* v. *Railroad,* 10 Pickle, 350, viz., when a witness is testifying as an expert it is competent to test his knowledge and accuracy, on cross-examination, by reading to him or having him read extracts from standard authorities upon the subject-matter involved, and then asking him whether he agrees or disagrees with the authorities, and then by comparing his opinion with those of the writer." See, also, *Strandmeyer* v. *Williamson,* 29 Ala., 558. It is true the witness, after having been examined at great length in chief, finally, on cross-examination, said he did.

not claim to be an expert. The witness was a practicing physician, and had expressed his opinion quite freely in respect of good practice and proper treatment in such cases. The defendant was entitled, on cross-examination, to test the witness' knowledge in the manner indicated, and the Court was in error in excluding the question propounded.

It is also assigned as error that the charge of the Court on the measure of damages was erroneous. The Court charged that in such case the law fixes the standard by which the injury shall be measured, which is "full and complete and ample compensation to the injured person; the injured person is entitled to be placed as near as may be in the condition they would have occupied if the negligent or unskillful treatment complained of had not been given him."

We think this charge objectionable, in that it was repeated and thus emphasized to stimulate the jury in assessing damages beyond the rule of simple compensation. The true rule in such cases is "compensation," and such adjectives as "full, complete, and ample" compensation may well convey to the mind of an ordinary juror the impression that something more than compensation was the meaning of the charge.

For the errors indicated the judgment is reversed and the cause remanded.