GERALDINE M. BROWN,      )
      )
    Plaintiff/Appellee,      )
      )    Appeal No.
v.      )    M1999-02739-COA-R3-CV
      )
HERMAN H. BROWN,      )    Franklin Circuit
      )    No. 7282
    Defendant/Appellant.      )

FILED

March 23, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CIRCUIT COURT FOR FRANKLIN COUNTY

AT WINCHESTER, TENNESSEE

THE HONORABLE THOMAS W. GRAHAM, JUDGE

JERRE M. HOOD
124 1st Avenue Northwest
Winchester, Tennessee 37398
    ATTORNEY FOR PLAINTIFF/APPELLEE

MARK STEWART
300 South College Street
Winchester, Tennessee 37398
    ATTORNEY FOR DEFENDANT/APPELLANT

AFFIRMED AND REMANDED

WILLIAM B. CAIN, JUDGE

# O P I N I O N

At issue in this case is a husband's obligation to continue to pay alimony in the face of his former wife's second marriage and of the subsequent annulment of that marriage. Because the husband failed to seek termination of his alimony obligation on this ground in any of the previous multiple legal proceedings between the parties, we find that this current challenge is prohibited by the doctrine of res judicata. We therefore affirm the trial court in its conclusion to deny the husband relief from his obligation to pay alimony to the wife.

## I. Facts

After a lengthy marriage, much of which was spent in Tennessee, Herman Brown ("the Husband") and Geraldine Brown ("the Wife") were divorced in the state of Florida. In September of 1989, a Florida court issued the order (hereinafter "the Florida 1989 Order") in which the parties were declared divorced. In the same order, the court decreed that the Husband should pay periodic alimony "until such time as the wife dies or remarries." The award of permanent alimony was affirmed by a Florida appellate court in December of 1990. Subsequent to their divorce, both parties relocated to Tennessee.

Once the Husband moved to Tennessee, the Wife instituted proceedings in a Tennessee circuit court in Franklin County to domesticate the Florida 1989 Order. By order entered July 28, 1992, the circuit court granted full faith and credit to the Florida 1989 Order and domesticated the same as an order of Tennessee (hereinafter "the Tennessee 1992 Order").

On March 26, 1993, the Wife applied for a marriage license and married a man named Billy Wilson in Florida. The Wife then filed for annulment of the marriage on April 6, 1993, alleging that she was forced under duress to marry Mr. Wilson. She received a swift hearing, and the marriage was annulled by order of the court dated April 8, 1993. Without articulating the grounds for the annulment, the Florida judgment of annulment stated that the Wife's marriage

2

to Billy Wilson was "hereby declared wholly null and void and of no legal force and effect."

From 1993 to 1996, several petitions for contempt were filed by the Wife as were petitions filed to reduce or eliminate alimony by the Husband. The Husband filed a January 1, 1994 Petition for Reduction or Elimination of Obligation to Pay Alimony on the grounds that the Wife had in the past co-habitated with a third person and that the amount of alimony was onerous and beyond the Husband's financial abilities. On May 4, 1994, in conjunction with the Husband's petition to eliminate alimony, the Wife answered interrogatories in which she fully disclosed that she had remarried in the state of Florida and that the marriage had been annulled. Subsequent to the filing of these interrogatories, a hearing was held on May 31, 1994, and an order entered June 8, 1994 pursuant to the Wife's petition for contempt and the Husband's petition for a reduction or elimination of alimony. The June 1994 Order adjudged the Husband to be in contempt and set an arrearage and ordered him to pay $223.50 per week. The order stated that circumstances had not changed to warrant a reduction in the amount of alimony previously ordered. Following another petition for contempt, an order was filed in October of 1994 further holding the Husband in contempt but also finding that he was entitled to a reduction in alimony to $100 per week. No appeal was taken from either of the court's 1994 orders. Upon another of the Wife's petitions for contempt and the Husband's petitions to modify the final decree, an order of contempt was filed in 1997 from which no appeal was taken.

After the Wife filed a final petition for contempt in April of 1998, the Husband filed the May 1, 1998 petition to eliminate the obligation to pay alimony upon which this appeal is based. In his petition, the Husband for the first time articulated as a ground for the elimination of alimony the March 1993 marriage of the Wife to Billy Wilson which took place in Florida. The Husband moved for summary judgment and filed a memorandum in support of his motion. In this memorandum, the Husband stated that upon receiving information of the Wife's second marriage, he filed a petition to eliminate alimony. He argued that pursuant to Tennessee law, the Wife's marriage obviated the Husband's alimony obligation and that the Wife's subsequent annulment did not reinstate her right

3

to receive alimony.

The court denied summary judgment to the Husband by order dated November 11, 1998. The court based its decision on a conclusion that the Wife's second marriage was void and not voidable. The court stated that it was relying on the finding of the Florida court, as revealed by the annulment petition. The only ground in the petition was that "the marriage was entered into by [the Wife] because of the coercion by [Mr. Wilson]." The Tennessee Circuit Court reasoned that "any agreement entered into by a party acting under coercion is void *ab initio* and cannot be said to have the affect [sic] of creating legal obligations or terminating legal rights of the coerced party." The court thus concluded that it "must honor the judgment of the Florida [c]ourt on this question as it has otherwise honored the original divorce decree."

After the denial of summary judgment, a hearing was held on the Husband's Petition to Eliminate Alimony and the Wife's Petition for Contempt. At the hearing on this petition, the Husband attempted to present the testimony of Billy Wilson as evidence that the factual basis for the purported annulment was not true. The trial judge denied the Husband the opportunity to present the testimony of Mr. Wilson. The court reasoned that it should not allow the Husband to litigate in a Tennessee court the issue of whether a fraud was committed on the Florida court at the time of the Wife's annulment proceeding there. The court did permit the admission of a signed deposition of Mr. Wilson taken on January 28, 1998 as an exhibit to the trial. In this deposition, Mr. Wilson testified that he did not force the Wife to marry him.

The final order, filed on March 12, 1999, placed the Husband in contempt of court for failing to pay alimony for the past 63 weeks resulting in a $6300 arrearage. The court ordered him to pay or serve 630 days in the jail. The court further stated that the Husband's Petition to Eliminate Alimony was not well taken.

## II. Issue

On appeal, the Husband presents one issue: whether he should be relieved of the obligation to pay alimony upon the marriage of the Wife to Billy Wilson. Essentially, the Husband has advanced two theories in support of his position that his alimony obligation should terminate. First, he attacks the Florida judgment annulling the Wife's marriage to Mr. Wilson on the grounds that the Wife perpetrated a fraud on the Florida court by committing perjury. Next, the Husband makes the argument that even if the Florida judgment of annulment stands, it does not legally effect a revival of the Wife's right to alimony under the law.

## A.

We first address the issue of the Wife's alleged fraud upon the Florida court. The Husband contends that the judgment of annulment was based upon the perjured testimony of the Wife. To prove this, the Husband presented at the hearing below the deposition testimony of Mr. Wilson in which Mr. Wilson claimed that he did not coerce the Wife to marry him. As this court has held:

> Foreign judgments are entitled to full faith and credit. U.S. Const. art. IV, § 1. Once a foreign judgment has been enrolled, it has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a court of record in Tennessee and may be enforced or satisfied in a like manner. Therefore, the grounds and procedures for vacating or reopening foreign judgments are those contained in Rule 60.02.

*Coastcom, Inc. v. Cruzen*, 981 S.W.2d 179, 181 (Tenn. App. 1998) (citations omitted); *see also Remington Investments, Inc. v. Obenauf*, 1 S.W.3d 666, 669 (Tenn. App. 1999).

Under Rule 60.02, one must obtain relief from a final judgment procured by fraud within a year after the judgment. Tenn. R. Civ. P. 60.02 (such a motion must be filed "not more than one year after the judgment, order or proceeding was entered or taken"); *see also Ellison v. Alley*, 902 S.W.2d 415,

5

417 (Tenn. App. 1995). The Husband first alleged that the Florida annulment judgment was based upon fraud in his May 1, 1998 petition to eliminate the obligation to pay alimony, more than five years after the April 8, 1993 Florida judgment of annulment. This is not a timely challenge. We therefore hold that the Florida judgment of annulment must be given full faith and credit.

**B.**

The Husband's second argument involves the legal effect of the Florida judgment of annulment on his alimony obligation. The Husband argues that even if Mr. Wilson did coerce the Wife to marry him and even if the annulment of this marriage was rightfully based upon this coercion, the Wife's second marriage was voidable as opposed to void and therefore her right to alimony is terminated. As stated, the trial court below held that the Wife's second marriage was void and that it did not terminate the Husband's alimony obligation. In so holding, the court stated that "[c]learly, any agreement entered into by a party acting under coercion is void *ab initio* and cannot be said to have the affect [sic] of creating legal obligations or terminating legal rights of the coerced party."

We find that the trial court's conclusion is contrary to the law of Tennessee and of Florida. Tennessee law "distinguishes between second marriages which are void, and those that are voidable, and allows for reinstatement of the spouse's right to support only" when a second marriage is void. *Brewer v. Miller*, 673 S.W.2d 530, 532 (Tenn. App. 1984). As for which marriages are void and which are voidable, our cases have made the following statement:

> A marriage is void from the beginning (1) when either party was already lawfully married; or (2) ...; or (3) when the parties are within prohibited degrees of kinship; or (4) when, for any other reason, the marriage was prohibited by law, and its continuance is in violation of law. [Citations omitted.]

> A marriage is voidable from the beginning (1) when either party was insane; or (2) the complainant was under duress; or (3) was under the age of consent; or (4) when the consent was obtained by force, or fraud, and was given by mistake;

6

or (5) when the defendant was impotent; or (6) when the woman was pregnant by another man without the knowledge of the complainant; or (7) when, for any other reason, the marriage was not binding on the complainant....

*Coulter v. Hendricks*, 918 S.W.2d 424, 426 (Tenn. App. 1995) (quoting 2 Gibson's Suits in Chancery § 1147 note 10 (5th ed. 1956)); *Woods v. Woods*, 638 S.W.2d 403, 405 (Tenn. App. 1982). Thus, where consent to a marriage was obtained by force, that marriage is voidable, not void. Therefore, we conclude that the clear law of Tennessee is that the Wife's marriage to Mr. Wilson was a voidable marriage, the annulment of which did not revive her right to alimony from the Husband.

Florida law draws the same distinction between the effect of void and voidable second marriages such that a former spouse's "right to alimony . . . terminate[s] with her voidable remarriage and [i]s not revived by the subsequent annulment." *Evans v. Evans*, 212 So.2d 107, 108-09 (Fla. Dist. Ct. App. 1968). In *Evans*, the wife's second marriage was annulled on the grounds of fraud and concealment. *Id.* at 108. The court held that such a marriage is voidable, and therefore the wife's right to alimony could not be restored. *Id.* at 108-09. By contrast, a bigamous marriage in Florida, as in Tennessee, is void and is therefore ineffectual to alter the legal rights of the parties to the original marriage. *Reese v. Reese*, 192 So.2d 1 (Fla. 1966). There is no specific Florida case dealing with a spouse's attempt to revive alimony rights upon the annulment of a remarriage on the grounds of coercion or force. However, from *Evans* and *Reese*, it appears that the Florida courts follow the general distinction between void and voidable marriages such that they would hold that a marriage entered by force is voidable.

We acknowledge that the Florida judgment of annulment states that the Wife's marriage to Mr. Wilson "is hereby declared wholly null and void and of no legal force and effect." However, just as the court in *Brewer v. Miller* did, we look to the basis of the annulment, not the language of the annulment judgment, to determine the effect of the second marriage on alimony. *Brewer v. Miller*, 673 S.W.2d 530, 532 (Tenn. App. 1984) (finding that the marriage was merely voidable since the ground for annulment was that the marriage was never

consummated despite the fact that the court had declared the marriage void *ab initio*). As stated above, the basis of annulment in this case leads to a conclusion that the Wife's second marriage was voidable, not void as the trial court found.

## C.

While we agree with the Husband that the trial court's refusal to grant him summary judgment was based upon an incorrect application of law, we find that the trial court's decision must be affirmed due to the doctrine of res judicata. "[R]es judicata bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit." *Hampton v. Tennessee Truck Sales, Inc.*, 993 S.W.2d 643, 645 (Tenn. App. 1999) (citing *Goeke v. Woods*, 777 S.W.2d 347, 349 (Tenn.1989)). In *Potts v. Celotex Corp.*, the court talked about the "single injury rule" which is "a logical extension of basic legal principles, primarily those underlying the doctrine of res judicata." 796 S.W.2d 678, 682 (Tenn. 1990). "Under the rule 'estoppel of the former judgment is conclusive, not only as to matters actually put in issue, but equally as to those which by due diligence of the litigant . . . might have been put in issue and determined.'" *Hayes v. Civil Serv. Comm'n of Metro. Gov't*, 907 S.W.2d 826, 828 (Tenn. App. 1995) (quoting *National Cordova Corp. v. City of Memphis*, 214 Tenn. 371, 379, 380 S.W.2d 793, 796 (1964)).

The Court of Appeals addressed this aspect of res judicata in the case of *McKinney v. Widner*, 746 S.W.2d 699, 705 (Tenn. App. 1987):

> The doctrine of res judicata is based on the principle not only that the same parties in the same capacities should not be required to litigate anew a matter which might have been determined and settled in the former litigation, but that litigation should be determined with reasonable expedition, and not be protracted through inattention and lack of diligence. *Jordan v. Johns*, 168 Tenn. 525, 79 S.W.2d 798 (1935).
>
> The rule requires that the whole subject of the litigation be brought forward by the parties, and the judgment concludes all matters, whether of action or defense, legally

pertaining to that subject which, by the exercise of reasonable diligence, might have been brought forward. *Sale v. Eichberg*, 105 Tenn. 333, 59 S.W. 1020, 52 L.R.A. 894 (1900).

. . .

This Court cannot accept the argument of appellant that, by disclaiming or failing to present a particular fact or theory supporting his action, a plaintiff may thereby reserve and preserve the disclaimed and unpresented fact or theory as an "ace in the hole" to be used as a ground for a second lawsuit based on such ground. To assent to plaintiff's insistence would be to condone piecemeal presentation of suits and defenses at the whim of the parties. Such is not the policy of our law and is contrary to the authorities set out above.

The Husband knew about the Wife's second marriage and subsequent annulment as early as May 4, 1994, at which time the Wife disclosed this information in her answer to interrogatories. Since that time, a hearing was held on May 31, 1994 and an order was entered on June 8, 1994 on petitions of both parties. Soon thereafter, another hearing was held on a petition for contempt filed by the Wife resulting in an October 1994 Order. Finally, in December of 1996, the Wife filed another contempt petition to which the Husband responded by filing a January 1997 petition to modify the final decree in which he alleged that material changes had occurred which warranted the elimination of alimony. An order was filed in February of 1997 upon these petitions.

At no time prior to the Husband's May 1998 petition to eliminate the obligation to pay alimony did the Husband mention the Wife's remarriage as a ground for the elimination of his alimony obligation or as a defense for his failure to pay alimony. We hold that such an argument is prohibited by the doctrine of res judicata at this point in the parties' litigious history. From the time of the May 4, 1994 disclosure by the Wife of her second marriage, the issue of the Husband's payment of alimony has been before the court on at least three occasions. With the exercise of reasonable diligence, the Husband should have discovered that the Wife's remarriage was a basis for the termination of alimony. To consider this argument now would "condone piecemeal presentation of suits and defenses at the whim of the parties." *McKinney*, 746 S.W.2d at 705.

### III. Conclusion

For the foregoing reasons, we affirm the trial court in its decision to deny the Husband relief from his alimony obligation. We find that the doctrine of res judicata prohibits the Husband from presenting the Wife's remarriage as a basis for the elimination of this alimony obligation. This case is affirmed and the costs are taxed against the Husband.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:


_____
BEN H. CANTRELL, P.J., M.S.


_____
PATRICIA J. COTTRELL, JUDGE