IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 25, 2012 Session

**ESTATE OF DAVID HOLT RALSTON**

**Appeal from the Chancery Court for Rutherford County**
**No. 100008CV      Donald P. Harris, Judge**

**No. M2012-00597-COA-R3-CV - Filed April 29, 2013**

The trial court granted summary judgment to a judgment creditor of the decedent's estate on a claim that the decedent fraudulently deeded an interest in real property to his wife so she would receive it free from the claims of his legitimate creditors after his death. The trial court's judgment was based on circumstances surrounding the property transfer that satisfied the elements of fraudulent conveyance under both Tenn. Code Ann. § 66-3-305(a)(1) and (a)(2). The widow denies that there was any fraudulent intent behind the transfer of the disputed property to her, but insists that it arose naturally from the love and affection that existed between husband and wife. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

W. Kennerly Burger, Murfreesboro, Tennessee, for the appellant, Estate of Fred R. Hobbs and Sherry Hobbs.

Rachel Ralston, Michael Scott Lattier, Kingsport, Tennessee, for the appellee, Estate of David Holt Ralston, Deceased, by John Ralston, Personal Representative.

**OPINION**

**I. BACKGROUND AND CHRONOLOGY**

The late Fred Hobbs was the defendant in three previous cases involving his misuse of a power of attorney to fraudulently transfer to himself property belonging to his elderly uncles, David and Charles Ralston. The judgments rendered against Mr. Hobbs in all three

cases were affirmed by this court. *Ralston v. Hobbs*, 306 S.W.3d 213 (Tenn. Ct. App. 2009); *Estate of Ralston v. Estate of Hobbs,* M2011-01037-COA-R3-CV, 2012 WL 1379861 (Tenn. Ct. App. Apr. 18, 2012) (Perm. app. denied Aug. 15, 2012); *Estate of Ralston ex. rel Ralston v. Hobbs*, M2009-02442-COA-R3-CV, 2010 WL 4272692 (Tenn. Ct. App. Oct. 28, 2010).[1]

The relevance of these previous cases is that the judgments resulting from them, totaling almost $1.5 million, were still unpaid when Fred Hobbs died, leaving one of his surviving uncles and the estate of another as judgment creditors of his estate. The transfer by deed of the property in question rendered the estate of Fred Hobbs insolvent and, thus, unable to pay his judgment creditors.

At issue in this case is a deed to a 27 acre farm in which Fred Hobbs quit claimed his interest in the property to himself and his wife, Sherry Hobbs, as tenants by the entireties. The timing of the execution and recordation of the deed in the present case and the relation of those acts to the timing of the filings in the earlier cases against Fred Hobbs is relevant to the arguments of both parties in this case, so a chronology of those events is in order.

| | |
|---|---|
| January 21, 2001 | Fred Hobbs and Sherry Read Hobbs marry after entering into a prenuptial agreement. Their agreement provided that their assets and liabilities would be individually owned and separately maintained. The proof showed that Sherry Hobbs had substantial property of her own at the time of marriage. One year earlier, Fred Hobbs had declared that he had no significant assets and was insolvent, and he received a bankruptcy discharge of about $80,000 in debt. The proof also showed that the couple maintained separate accounts and separate title to all their property throughout their marriage. |
| March 29, 2005 | Fred Hobbs purchases a 27 acre piece of property, taking title to the property by warranty deed in his name only. The property includes a house which the parties moved into in May of 2005.[2] |
| November 8, 2005 | John Ralston, Personal Representative of the Estate of David Holt Ralston, files a complaint against Fred Hobbs in the Chancery Court of |

[1]Two of the cases resulted in money judgments against Fred Hobbs. The other (*Estate of Ralston v. Estate of Hobbs,* 2012 WL 1379861) only involved an order to sell certain real property owned by Mr. Hobbs to satisfy a money judgment against him.

[2]Sherry Hobbs acknowledged that at the time of her marriage to Fred Hobbs, she owned one residence in Davidson County and another one in Bedford County.

Rutherford County (Suit # 1) to rescind twelve deeds executed through the misuse of a power of attorney to farmland that had been owned by David Ralston worth over $1 million.

December 22, 2005    Fred Hobbs enters into Agreed Order not to transfer, mortgage, lease, give, or deal in any property that was ever in the name of David Ralston.

February 23, 2006    David Ralston's brother, Thomas Ralston, files a complaint (Suit # 2) against Fred Hobbs for fraudulent use of power of attorney to withdraw all the funds from Thomas Ralston's bank accounts. He seeks damages of $279,000 plus interest.

January 11, 2007    Fred Hobbs executes quitclaim deed that is the subject of this lawsuit, conveying his interest in the 27 acre property to himself and his wife Sherry Hobbs, as tenants by the entireties. Sherry Hobbs paid no consideration for the property and was unaware of the execution of the quitclaim deed.

February 14, 2007    Fred Hobbs is diagnosed with liver cancer.

April 17, 2007    John Ralston dismisses suit #1 without prejudice, to allow him to refile the action and name certain indispensable parties.

Summer 2007    Fred Hobbs adds Sherry Hobbs' name to the titles to four vehicles that had been his property.

October 30, 2007    Suit #1 refiled

March 12, 2008    Quitclaim deed of January 11, 2007 recorded

July 7, 2008    Chancery Court enters summary judgment against Fred Hobbs in Suit #2, and awards Thomas Ralston $491,000.

November 2, 2009    Chancery Court enters judgment against Fred Hobbs in Suit # 1 and awards the Estate of David Ralston $962,000 for the value of property Mr. Hobbs fraudulently acquired and subsequently sold.

January 5, 2010    John Ralston, Personal Representative of the Estate of David Holt Ralston, files the instant, "Complaint to Avoid Fraudulent Transfers" against Fred Hobbs and Sherry Hobbs, seeking rescission of the quitclaim deed to the 27 acre property under the Uniform Fraudulent Transfer Act, Tenn. Code Ann. § 66-3-301 et seq.

June 24, 2010    Fred Hobbs dies. His will names Sherry Hobbs as his beneficiary and as the executrix of his estate.

The Estates of David Ralston and Thomas Ralston subsequently filed claims against the Estate of Fred Hobbs for the unpaid judgments against him. On September 24, 2010, Sherry Hobbs filed a notice that the estate was insolvent.

## II. THE INSTANT SUIT

As we noted above, John Ralston filed his "Complaint to Avoid Fraudulent Transfers" prior to the death of Fred Hobbs. Mr. Ralston alleged that Fred Hobbs executed the quitclaim deed of January 11, 2007 in an attempt to "hinder, delay or defraud his creditors." He asked the court to exercise its powers under Tenn. Code Ann. § 36-3-308 to rescind the quitclaim deed so the 27 acre property could be returned to the estate of Fred Hobbs and used to satisfy the legitimate claims of his creditors. Sherry Hobbs filed an Answer to the Complaint on February 16, 2010. She denied that the quitclaim deed was made to hinder or defraud any party, and asserted that it was a routine transaction, actuated by the normal love and affection between husband and wife.

On May 13, 2011, Mr. Ralston amended his complaint, substituting as defendants "Sherry Hobbs, individually and as representative of the Estate of Fred Hobbs." He also asserted additional claims to avoid transfers by Fred Hobbs to his wife of certain vehicles, farm equipment, livestock, and interests in a farming operation.

Mr. Ralston filed a motion for summary judgment on August 19, 2011, accompanied by a memorandum in support of the motion, a statement of undisputed facts, and excerpts from discovery depositions. The excerpt from Sherry Hobbs' deposition contains her responses to repeated questions about numerous deeds conveying property to Fred Hobbs as well as deeds conveying property from Fred Hobbs to others. She testified that throughout their marriage, she and her husband kept their assets and business dealings entirely separate: "Mr. Hobbs took care of his business and I took care of my business."

The excerpt from Fred Hobbs' deposition of January 5, 2010 contains his answers to questions about the extent of his property ownership. He denied that he owned any real

property other than what had already been recorded: "Everything that I own's of record and it's all in Rutherford County, so you know, you can double check." This deposition was taken after Myrtle Hobbs conveyed over 65 acres to Fred Hobbs by quitclaim deed, a deed that in accordance with his instructions, was not recorded until after his death.

Sherry Hobbs filed a motion to dismiss the Complaint on November 14, 2011. She argued that the fraudulent conveyance claim was barred by the operation of res judicata because it could have been adjudicated in the prior lawsuit brought by John Ralston against Fred Hobbs on behalf of the Estate of David Ralston. On the same day, she filed a response to Mr. Ralston's motion for summary judgment, in which she again asserted the defense of res judicata and also challenged plaintiff's claim of fraud on both legal and factual grounds.

The trial court heard oral argument on Mr. Ralston's summary judgment motion on November 21, 2011. The court set out its decision in a Memorandum Opinion entered on January 23, 2012, and in an order entered on February 16, 2012. In the Memorandum Opinion, the trial court summarized the factual background of this case, including the prior judgments against Fred Hobbs. The court then went on to analyze those facts in light of the "badges of fraud" set out in Tenn. Code Ann. §66-3-305(b).

The court reasoned that the undisputed facts showed that the circumstances surrounding the quitclaim deed at issue closely matched nine of the eleven badges of fraud described in the statute, and thus that the conveyance was fraudulent as to Fred Hobbs' creditors. The court concluded that the conveyance was made "with actual intent to hinder, delay, or defraud creditors" under Tenn. Code Ann. § 66-3-305(a)(1), and was also fraudulent under Tenn. Code Ann. § 66-3-305(a)(2). It accordingly granted the plaintiff's motion for summary judgment and rescinded the transfer of real property in the January 11, 2007 quitclaim deed, as well as the transfers of interest in the vehicles. This appeal followed.

### III. ANALYSIS

#### A. The Standard of Review

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk Southern Railway Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Id.* Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). Those requirements are that the filings supporting the motion show that there is no genuine issue of material fact and that

the moving party is entitled to judgment as a matter of law.  Tenn. R. Civ. P. 56.04; *Blair*, 130 S.W.3d at 764.

The moving party has the burden of demonstrating it is entitled to judgment as a matter of law and that there are no material facts in dispute.  *Martin*, 271 S.W.3d at 83; *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998).  To be entitled to summary judgment, a defendant moving party must either (1) affirmatively negate an essential element of the non-moving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial.  *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1, 9 (Tenn. 2008).  If the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of a genuine issue of material fact.  *Martin*, 271 S.W.3d at 84; *Hannan*, 270 S.W.3d at 5; *Staples v. CBL & Associates*, 15 S.W.3d 83, 86 (Tenn. 2000) (citing *Byrd v. Hall*, 847 S.W.2d, 208, 215 (Tenn. 1993)).

## B.  The Res Judicata Argument

Sherry Hobbs' first argument on appeal is that Mr. Ralston's claims are barred by the doctrine of res judicata.  But even a cursory examination of the record indicates that the doctrine does not apply.  Res judicata is a claim preclusion doctrine that bars a second suit between the same parties or their privies on the same cause of action with respect to all the issues which were or could have been litigated in the former suit.  *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995); *Brown v. Brown,* 29 S.W.3d 491, 495 (Tenn. Ct. App. 2000); *Collins v. Greene County Bank*, 916 S.W.2d 941, 945 (Tenn. Ct. App. 1995).

Res judicata serves an important function in our legal system.  It promotes finality in litigation by barring parties from re-litigating claims that have already been decided. *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976); *In re Estate of Boote*, 198 S.W.3d 699, 718-19 (Tenn. Ct. App. 2005).  As this court has stated, "[a] plaintiff is only entitled to one bite of the apple and he may not relitigate the same again and again in hopes of a different result."  *Gerber v. Holcomb*, 219 S.W.3d 914, 919 (Tenn. Ct. App. 2006).

Parties asserting a res judicata defense must demonstrate that: (1) a court of competent jurisdiction rendered the prior judgment; (2) the prior judgment was final and on the merits; (3) the same parties or their privies were involved in both proceedings; and (4) both proceedings involved the same cause of action.  *Young v. Barrow*, 130 S.W.3d 59, 64 (Tenn. Ct. App. 2003); *Lee v. Hall*, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990).  The present case does not involve the same parties or their privies as did the suit that produced the prior judgment, nor does it involve the same cause of action.

The prior suit against Fred Hobbs and other parties was based upon Mr. Hobbs' misuse of a power of attorney to withdraw funds from David Ralston's bank accounts for his own personal use. Sherry Hobbs was not named as a defendant in that lawsuit, and there was no suggestion either in that suit or in the current one that she was privy to any transactions involving David Ralston's bank accounts. The current suit involves a dispute over a piece of real property in which David Ralston never possessed any interest. There are no allegations that the funds fraudulently obtained from David Ralston's accounts were used to purchase that property. The challenged conveyance in the present case did not involve the misuse of a power of attorney, but rather a quitclaim deed used to defraud creditors.

Sherry Hobbs acknowledges that the present claims were not adjudicated in the prior suit, but she contends that she is nonetheless entitled to the benefits of res judicata, for the doctrine may be applied, not only to claims that were actually litigated in a prior suit, but also to claims that could have been litigated in the same suit. *Creech v. Addington*, 281 S.W.3d 363, 376 (Tenn. 2009); *Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn. 1987). The obvious benefits of that provision are the promotion of judicial economy and the prevention of piecemeal litigation that can drive up legal costs for all parties.

Ms. Hobbs argues that the plaintiff could have added the claim against her to the earlier case while it was still pending, as would be allowed under the liberal provisions of Tenn. R. Civ. P. 18.01 (permitting the joinder of "as many claims, legal or equitable, in contract or tort, as the party has against an opposing party."). We note, however, that Fred Hobbs did not execute the quitclaim deed at issue until after Mr. Ralston filed the initial lawsuit against him and that he did not record the deed until after that lawsuit was dismissed without prejudice and subsequently refiled. It is unclear from the record if Mr. Ralston was even made aware of the existence of the quitclaim deed prior to the death of Fred Hobbs and his widow's filing of the notice of insolvency.

Further, it is well established that "[a] prior judgment or decree does not prohibit the later consideration of rights that had not accrued at the time of the earlier proceeding or the re-examination of the same question between the same parties when the facts have changed or new facts have occurred that have altered the legal rights and relations of the parties." *White v. White*, 876 S.W.2d 837, 839-840 (Tenn. 1994); *State ex rel. Cihlar v. Crawford*, 39 S.W.3d 172, 178 (Tenn. Ct. App. 2000). Sherry Hobbs did not obtain an undivided interest in the property at issue until after the death of her husband, by which time final judgment had already been rendered in the initial case. Thus, the rights under challenge in this lawsuit had not fully accrued at the time of the prior judgment.

**C. Tenn. Code Ann. § 66-3-305(a)(1)**

Tennessee courts have long been authorized to reverse or rescind conveyances if they were made to "delay, hinder or defraud creditors." *M. & N. Freight Lines v. Kimbel Lines*, 170 S.W.2d 186 (Tenn. 1943); *Robinson v. Frankel*, 3 S.W. 652, 653 (Tenn. 1887)`; *Churchill v. Wells*, 47 Tenn. 364, 370 (1870). A determination of whether a conveyance is fraudulent depends upon the facts and circumstances of each case. *Macon Bank & Trust Co. v. Holland,* 715 S.W.2d 347, 349 (Tenn. Ct. App. 1986). Fraudulent transferors rarely disclose their intent in a way that is capable of direct evidence, so persons seeking to set aside a fraudulent transfer must frequently resort to circumstantial evidence. *McConnico v. Third Nat'l Bank,* 499 S.W.2d 874, 887 (Tenn. 1973).

Such circumstantial indicators of fraud are often called "badges of fraud," and have been described as "any facts that throw suspicion on the transaction and call for an explanation." *Macon Bank & Trust Co. v. Holland*, 715 S.W.2d at 349. Among the circumstances creating a strong inference of fraud are when a conveyance is made "[w]ithout a fair consideration, leaving the grantor insolvent." *Hicks v. Whiting*, 258 S.W. 784, 794 (Tenn. 1924). The basic framework for identification of fraudulent transfers has been incorporated into the provisions of the Uniform Fraudulent Transfer Act, Tenn. Code Ann. § 66-3-301 et seq., but has been somewhat refined to improve its effectiveness.

Tennessee Code Annotated § 66-3-305 is captioned "Transfers Fraudulent as to Present and Future Creditors," meaning that under the appropriate circumstances, a transfer can be deemed fraudulent in regard to a creditor whose claim had not yet matured at the time the transfer was made. The statute sets out two ways whereby a plaintiff can establish that a conveyance of property was fraudulent.

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>> (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

The trial court found that the conveyance in this case was fraudulent under both Tenn. Code Ann. § 66-3-305(a)(1) and (2). When considering whether a conveyance under (a)(1) was made with "actual intent to hinder, delay, or defraud" a creditor, the legislature has set out at Tenn. Code Ann. § 66-3-305(b) a list of eleven factors for the courts to consider, which closely resemble the traditional "badges of fraud." The trial court found that nine of those factors existed in this case. We will briefly discuss each of the applicable factors.

**(1) The transfer or obligation was to an insider**.

The transfer was to Sherry Hobbs by creation of a tenancy by the entireties. Under Tenn. Code Ann. § 66-3-302(7)(A)(I), a relative of the debtor is included in the definition of an insider. Under Tenn. Code Ann. § 66-3-302(11) a spouse is included in the definition of a relative.

**(2) The debtor retained possession or control of the property transferred after the transfer.**

Fred Hobbs' possession and control of the property did not change after he executed the quitclaim deed.

**(3) The transfer or obligation was disclosed or concealed.**

It is undisputed that Fred Hobbs did not disclose the quitclaim deed to his wife or to his creditors at the time it was executed and that he did not record it until fourteen months after it was executed.

**(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.**

Two separate lawsuits had been filed against Fred Hobbs prior to his execution of the quitclaim deed, both of which involved claims for substantial sums. Ms. Hobbs has suggested on appeal that one of the lawsuits was dismissed without prejudice prior to the execution of the quitclaim deed. But the timeline in the record, which she concedes is accurate, shows that the dismissal occurred after the deed was executed, although before it was recorded.

**(5) The transfer was of substantially all the debtor's assets.**

Sherry Hobbs insists that this factor does not apply because when the quitclaim deed was executed, Fred Hobbs held title to assets worth in excess of $1.5 million. However, the

largest portion of those assets by far had to have been the farmland that Fred Hobbs had acquired from David Ralston through the misuse of a power of attorney. Because of the allegations of fraud against Fred Hobbs arising from his acquisition of that same property, he was subject to an agreed order that prohibited him from transferring or conveying any property that had ever belonged to David Ralston. Thus, the quitclaim deed amounted to a transfer of substantially all of Fred Hobbs' unencumbered assets. At the time of his execution of the quitclaim deed, he did not own the property discussed next.

**(6) The debtor removed or concealed assets**.

In May of 2007, Fred Hobbs' mother, Myrtle Hobbs, conveyed over 65 acres of property to her son Fred Hobbs by quitclaim deed for no consideration. Fred Hobbs did not record the deed or inform Sherry Hobbs of its existence. Shortly after her husband passed away, Sherry Hobbs found the unrecorded deed in his personal safe, with a handwritten note attached to it, reading "record this deed after my death." She recorded the quitclaim deed to the 65 acres on June 28, 2010. Fred Hobbs concealed his acquisition by deed of a 65 acre property that he acquired from his mother, he failed to mention that property during sworn testimony when called upon to respond under oath to a direct question about the extent of his property, and he did not record the deed during his lifetime.

**(7) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.**

Sherry Hobbs contends on appeal that factor (8) does not apply in this case because consideration existed for the quitclaim deed in the form of the love and affection between husband and wife. However, consideration under the statute must be for "value," which Tenn. Code Ann. § 36-3-304(a) defines narrowly: "Value is given for a transfer or an obligation if, in exchange for the value or obligation, property is transferred or an antecedent debt is secured or satisfied." The Comments to the Official Text of the statute further clarify this definition: "[c]onsideration having no utility from a creditor's viewpoint does not satisfy the statutory definition."

**(8) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.**

Sherry Hobbs filed a notice of insolvency of the estate after her husband's death. She claims, however, that Fred Hobbs was not insolvent at the time the quitclaim deed was executed. Tenn. Code Ann. § 66-3-303(a) defines insolvency as when "the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation." Tennessee Code Annotated § 66-3-303(d) further provides that "[a]ssets under this section do not include

property that has been transferred, concealed, or removed with intent to hinder, delay, or defraud creditors or that has been transferred in a manner making the transfer voidable under this part." Ms. Hobbs does not offer any theories about the reasons for the deterioration of Fred Hobbs' financial situation from alleged solvency to insolvency. The only conclusion that can be drawn from the record is that it resulted from the loss of property he had acquired from David Ralston.

**(9) The transfer occurred shortly before or shortly after a substantial debt was incurred.**

The transfer occurred seven months before the trial court entered a substantial judgment against Fred Hobbs in the case brought by Thomas Ralston, and twenty-two months before a second, even more substantial judgment was entered against him in the case brought by the Estate of David Ralston. Within the context of the normal timeline of an ongoing lawsuit, it is reasonable to conclude that the transfer occurred "shortly before . . . a substantial debt was incurred." Additionally, at the time of the transfer, Fred Hobbs was aware of the potential liability resulting from the lawsuits.

Despite the undisputed facts related to the above factors, Sherry Hobbs insists that summary judgment is an inappropriate vehicle for determining whether Fred Hobbs intended to defraud his creditors when he executed the quitclaim deed of January 11, 2007. She argues that intent is a subjective matter, which cannot be resolved without "a full and complete inquiry into all the relevant facts." Our Supreme Court has stated that "[a] person must be held to intend the fraud which his acts necessarily produce." *Churchill v. Wells*, 47 Tenn. 364, 370 (1870).

The General Assembly has determined that a conveyance can be deemed fraudulent if certain facts are proved. Tenn. Code Ann. § 66-3-305. Additionally, the legislature has set out factors for the trial court to consider in determining whether a conveyance was made with actual intent to defraud. Tenn. Code Ann. § 66-3-305(b). Thus, direct evidence of actual intent is not necessary and is almost impossible to obtain. Herein, the trial court considered all the statutory factors and the undisputed proof. Intent was, therefore, proved.

We have already found that Fred Hobbs did not receive "reasonably equivalent value" for the purposes of the Uniform Fraudulent Transfer Act when he executed the quitclaim deed at issue. Thus, the first prong of the test for fraudulent conveyance under this subsection has been satisfied.

To satisfy the second prong, the proof must show that Fred Hobbs reasonably should have believed that he would incur debts beyond his ability to pay as they became due. The

undisputed proof shows that at the time Fred Hobbs married Sherry Hobbs, he had no significant assets, since he had only recently received a discharge in bankruptcy. He subsequently used a power of attorney to transfer David Ralston's farmland and Thomas Ralston's life savings to himself. Lawsuits were filed for the recovery of all those assets prior to the execution of the quitclaim deed at issue. Even though judgment had not yet been rendered in those suits, it can hardly be disputed that Fred Hobbs had good reason to believe that once the lawsuits ran their course, he would incur liabilities and debts that he could not pay.

In sum, we conclude that the trial court did not err in granting summary judgment to the plaintiff under Tenn. Code Ann. § 66-3-305(a)(1).

## IV. CONCLUSION

The judgment of the trial court is affirmed. We remand this case to the Chancery Court of Rutherford County for any further proceedings necessary. Tax the costs on appeal to the appellant, Sherry Hobbs.

_____
PATRICIA J. COTTRELL, JUDGE