IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 19, 2019 Session

## KAREN ABRAMS MALKIN v. REED LYNN MALKIN

**Appeal from the Chancery Court for Shelby County**
**No. D27924  Walter L. Evans, Judge**

_____

### No. W2018-01197-COA-R3-CV
_____

This appeal involves a former husband's fourth petition to reduce or terminate his alimony in futuro obligation since the parties were divorced.  When considering the appeal of husband's third attempt, in *Malkin v. Malkin*, 475 S.W.3d 252 (Tenn. Ct. App. 2015), this Court reversed the trial court's reduction of the award and reinstated the prior alimony obligation.  We found that the husband's retirement was objectively reasonable and constituted a substantial and material change in circumstances, but we concluded that the husband failed to prove that the change in circumstances significantly diminished his financial ability to pay alimony or his former wife's need for it.  Just months after the Tennessee Supreme Court denied the husband's application for permission to appeal, he filed his fourth petition to reduce or terminate his obligation.  The wife filed a counter-petition to increase the award.  The trial court granted the husband's petition, again, and reduced the award to less than half of its previous amount.  The wife appeals.  We reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and THOMAS R. FRIERSON, II, J., joined.

Lori R. Holyfield, Memphis, Tennessee, for the appellant, Karen Abrams Malkin.

Robert A. Wampler and J. Luke Sanderson, Memphis, Tennessee, for the appellee, Reed Lynn Malkin.

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

Reed Lynn Malkin ("Husband") and Karen Abrams Malkin ("Wife") were married in 1978. Prior to the marriage, Wife had worked as a professional ballet dancer and owned a dance studio for a few years. She also worked at a restaurant owned by her father. However, Wife spent a substantial amount of time out of the workforce during the marriage to serve as primary caretaker for the parties' two children. Husband worked as an attorney throughout the marriage. According to Wife, the parties traveled around the world, they bought whatever they wanted, and she never thought about money.

Wife filed for divorce in 1996. The chancery court held a two-day trial in March 1998, and a divorce decree was entered in April 1998. Husband admitted to inappropriate marital conduct. The parties' older child was at or near the age of majority, and Wife was awarded custody of the younger child. The divorce decree did not contain any findings regarding Husband's income, but it contained the following paragraph addressing alimony:

> [T]he Court finds, after considering all of the relevant factors set forth in T.C.A. § 36-5-101, such as the length of the marriage, [Wife's] age, [Wife's] education, and other relevant factors, that she is so economically disadvantaged that rehabilitation is not feasible or possible, so that the Court awards [Wife] alimony in futuro in the sum of $3,500 per month, which shall be paid beginning April 1, 1998, and the first of every month thereafter until her death or remarriage[.]

Husband was also ordered to pay $1,500 per month in child support.

In April 2003, five years after the divorce decree was entered, Husband filed his first petition to reduce or terminate his alimony in futuro obligation. Husband alleged that "at the time of the divorce," he was earning a gross income from his "professional corporation" of $2,221,962, and the annual distribution to him from his professional corporation was $744,231. For the most recent tax year, 2002, Husband alleged that his professional corporation had received annual gross income of $882,650, and it distributed gross income to him in the sum of $157,298. Husband alleged that his taxable income had decreased from $736,009 in 1998 to only $90,969 in 2002, for a decrease of 88 percent. Husband argued that this constituted a substantial and material change in circumstances justifying a reduction or termination of his alimony in futuro obligation. He further alleged that Wife "was not fully employed" at the time of the divorce decree and that she had refused to work on a full-time basis since that date.

After a hearing, the chancery court entered an order addressing Husband's petition in January 2004. The trial court found that Husband had a sharp increase in income in 1998 due to the settlement of one case, but his income was not nearly that high in the

years before or after that settlement. More importantly, however, the trial court found nothing in the record to indicate that the 1998 income figure was before the original chancellor at the time of the divorce trial in March 1998. The trial court found that Husband's taxable income in the two years prior to the divorce trial equaled $273,000 in 1997 and $271,000 in 1996, and this was the information the court had before it at the divorce trial when it made its original award.

Putting aside the anomaly that occurred in 1998, the trial court found that Husband's taxable income for the five years *since* the divorce (from 1999 to 2003) ranged between $157,000 and $281,000. Recognizing the "up and down" nature of a law practice, the trial court decided to calculate Husband's average taxable income for the past five years, which equaled $221,894. The trial court determined that this represented an 18 percent decrease in income for Husband from the $271,000 he earned around the time of the divorce.

The trial court also found that at the time of the divorce trial, Wife had shown her expenses to be approximately $6,250 per month. The trial court noted that Wife's current affidavit of income and expenses reflected only $4,705 in expenses, indicating a decrease of 25 percent. Considering Husband's decrease in income and Wife's decrease in expenses, the trial court reduced Husband's alimony obligation by 18 percent, from $3,500 to $2,870 per month effective February 1, 2004. However, the court also ordered Husband to pay a portion of Wife's attorney's fees.

Three years later, in 2007, Husband filed his second petition to reduce or terminate his alimony in futuro obligation. He alleged that Wife had been unemployed "during most if not all of the parties' marriage," at the time of the divorce, and at the time of the last hearing, and he claimed "it was not foreseeable that she would ever be employed." Husband alleged that Wife had recently obtained employment with a ballet school in Nashville and was believed to be earning at least $25,000 per year. He argued that this constituted a substantial and material change in circumstances warranting reduction or termination of his alimony obligation. Wife filed a counter-petition seeking an increase in her alimony obligation.

The second modification proceeding lasted three years. The matter was tried over the course of six days in late 2009. The trial court's order noted the "excessive amount of legal energy, talent, and expenses consumed and invested into this proceeding on both sides." The trial court found that Husband's average taxable income for the past five years was $265,397, nearly as much as he earned at the time of the original divorce hearing ($271,000).[1] The court also found that Wife had "relevant monthly expenses" of

---

[1] The trial court again calculated Husband's "taxable income," stating, "The Court will note that in every instance where [the original chancellor] and this Court assessed [Husband's] ability to pay, the Court dealt only with [his] taxable income, not any 401K or deferred comp[.]"

$6,200 per month, roughly the same amount she had at the time of the divorce. However, the court found her income to be approximately $1,300 per month, and it found that she was also qualified to receive some social security retirement benefits because she had reached the age of 64. Considering these additional sources of income now available to Wife, the trial court found that the existing alimony award of $2,870 per month should not be disturbed despite the increase in Husband's income and Wife's expenses since the last hearing. Both petitions to modify were denied pursuant to an order entered in April 2010.

Three years later, in May 2013, Husband filed his third petition to reduce or terminate his alimony in futuro obligation. This time, Husband alleged that he had retired in December 2012 and was only drawing social security and pension funds, so he could no longer afford to pay Wife alimony in futuro at the rate of $2,870 per month. After a very brief hearing in December 2013, with the entire transcript spanning only 88 pages, the trial court entered an order granting Husband's petition. The trial court found that Husband had retired at the age of 67 and that his income was limited to $8,000 per month, consisting of $5,500 from a retirement account and $2,500 from social security. The trial court found that "[Husband] was earning approximately $271,000.00 per year at the time of the previous modification of alimony setting that amount at $2,870 per month and he is now earning approximately $98,000.00 per year." As such, the court found that Husband "suffered at least a 2/3's decrease in income and therefore the alimony in futuro heretofore awarded should be modified to the sum of $1,035.00 per month effective January 1, 2014." Wife timely filed a notice of appeal to this Court.

On appeal, we began by examining the type of alimony awarded to Wife by the final decree of divorce:

> This case involves an award of alimony in futuro. This type of alimony "is intended to provide support on a long-term basis until the death or remarriage of the recipient." *Gonsewski* [*v. Gonsewski*], 350 S.W.3d [99,] 107 [(Tenn. 2011)] (citing Tenn. Code Ann. § 36-5-121(f)(1)). Alimony in futuro can be awarded "when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible." Tenn. Code Ann. § 36-5-121(f)(1). In other words, alimony in futuro is appropriate when one spouse "is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse[.]" Tenn. Code Ann. § 36-5-121(f)(1).

> An award of alimony in futuro remains in the court's control for the duration of the award and "may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and

- 4 -

material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A). The party seeking modification of the alimony award "bears the burden of proving that a substantial and material change in circumstances has occurred." *Wiser v. Wiser*, 339 S.W.3d 1, 12 (Tenn. Ct. App. 2010) (citing *Freeman v. Freeman*, 147 S.W.3d 234, 239 (Tenn. Ct. App. 2003)). "'[W]hether there has been a sufficient showing of a substantial and material change of circumstances is in the sound discretion of the trial court.'" *Bogan* [*v. Bogan*], 60 S.W.3d [721,] 727 [(Tenn. 2001)] (quoting *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999)).

*Malkin v. Malkin* ("*Malkin I*"), 475 S.W.3d 252, 257-58 (Tenn. Ct. App. 2015) (footnote omitted).[2]

With respect to this first prong of the analysis, we discussed the circumstances surrounding Husband's recent retirement and whether his retirement constituted a substantial and material change in circumstances:

It is well-settled that "when an obligor's retirement is objectively reasonable, it does constitute a substantial and material change in circumstances—irrespective of whether the retirement was foreseeable or voluntary—so as to permit modification of the support obligation." *Bogan*, 60 S.W.3d at 729. However, it is equally clear that "an obligor cannot merely utter the word 'retirement' and expect an automatic finding of a substantial and material change in circumstances. Rather, the trial court should examine the totality of the circumstances surrounding the retirement to ensure that it is objectively reasonable." *Id.* In the case before us, the trial court found that Husband "retired at sixty seven (67) years of age from the practice of law," but the court did not make any finding regarding whether Husband's retirement was objectively reasonable. On appeal, Wife seems to imply that Husband's retirement either was not "bona fide" or was not objectively reasonable, noting that he maintained his law license in "active" status and continued to advertise his services as a mediator. Husband testified that he officially closed his law office on March 1, prior to the filing of his petition for modification on May 31, 2013. He testified that he would be interested in doing mediation work but said he had not received any calls for such work. Husband testified that his law practice essentially "dried up" because his work was primarily worker's compensation cases involving employees of Northwest/Delta, and Northwest/Delta no longer maintained a workforce in Memphis. He testified that he experienced periods of several months without any new

[2] Because both Husband and Wife rely on the findings from *Malkin I* to a great extent, we discuss the Court's findings at length.

clients, and he did not earn enough to cover his overhead during the last five months he practiced. Husband also testified that he shared office space and expenses with a gentleman who was retiring, and the building they leased had been sold, so in order to continue practicing he would have been required to lease a new office and hire new staff. Husband was 67 years old and dealing with some health issues. Considering these circumstances, Husband's retirement was bona fide and objectively reasonable. . . .

*Id.* at 258. We held that "Husband's retirement constituted a substantial and material change in circumstances," but, we added, "this finding does not end our inquiry." *Id.*

Next, we turned to the second prong of the alimony modification analysis:

"[E]ven when an obligor is able to establish that a retirement is objectively reasonable, and therefore that it constitutes a substantial and material change in circumstances, the obligor is not necessarily entitled to an automatic reduction or termination of his or her support obligations." *Bogan*, 60 S.W.3d at 730. The alimony statute provides that an award of alimony in futuro "may" be modified upon a showing of a substantial and material change in circumstances. Tenn. Code Ann. § 36-5-121(f)(2)(A). "As evidenced by its permissive language, the statute permitting modification of support awards contemplates that a trial court has no duty to reduce or terminate an award merely because it finds a substantial and material change in circumstances." *Bogan*, 60 S.W.3d at 730. Instead, the change in conditions resulting from retirement merely allows the obligor the opportunity to demonstrate that reduction or termination of the award is appropriate. *Id.* The "actual modification of the award, if any, is addressed to the trial court's discretion after considering the relevant factors listed in Tennessee Code Annotated section 36-5-[121(i)]." *Id.* at 727. Although the statute lists numerous factors for consideration, "the two most important considerations in modifying a spousal support award are the financial ability of the obligor to provide for the support and the financial need of the party receiving the support." *Id.* at 730.

*Id.* at 258-59 (footnote omitted).

We noted that the trial court made few findings to justify its reduction of the award from $2,870 to $1,035 per month. *Id.* at 259. Initially, we noted that the trial court made an incorrect factual finding regarding Husband's income, as the trial court found that "'[Husband] was earning approximately $271,000.00 per year *at the time of the previous modification of alimony setting that amount at $2,870.00 per month* and he is now earning approximately $98,000.00 per year.'" *Id.* (emphasis added). We explained that this finding was factually incorrect because Husband was actually earning

- 6 -

approximately $271,000 at the time of the divorce, and at the time of the modification to $2,870 in 2004, he was earning $221,894. *Id.* at 260.

In any event, however, we found that the trial court applied an incorrect legal standard by focusing solely on the decrease in Husband's income without making "any findings regarding Husband's expenses, Wife's income, Wife's expenses, or any other factors relevant to setting an alimony obligation." *Id.* The trial court had simply considered Husband's decrease in income and reduced the alimony award by a corresponding percentage. *Id.* We explained:

> Deciding whether an obligor has the ability to provide spousal support requires consideration of more than the obligor's income. *See, e.g., Evans v. Young*, 280 S.W.3d 815, 827 (Tenn. Ct. App. 2008) (finding that an obligor still had the "ability to pay" the same level of alimony despite his retirement and significant reduction in income). A decrease in income "should not be viewed in a vacuum." *Proctor v. Proctor*, No. M2006-01396-COA-R3-CV, 2007 WL 2471504, at *5 (Tenn. Ct. App. Aug. 31, 2007). To the contrary, we must consider the obligor's "ability to pay" the alimony obligation, which can be impacted by a variety of factors. *Id.* "Income is but one of the factors to be considered." *Id.* The obligor's expenses are another important factor for consideration. *Id.* Moreover, "the trial court should carefully consider the relevant factors of Tennessee Code Annotated section 36-5-[121(i)] in deciding by what amount, if any, the award should be modified." *Bogan*, 60 S.W.3d at 734. The need of the receiving spouse cannot be overlooked; it is "an important consideration in modification cases." *Id.* at 730.

*Id.* at 261.

Because the trial court had erred in its factual findings and also applied an incorrect legal standard, we reviewed the limited evidence presented at the hearing to determine whether modification of the alimony award was appropriate. *Id.* From our review of the record, we concluded that Husband failed to meet his burden of demonstrating that modification was warranted. *Id.* Although he had experienced a decrease in income due to his retirement, he was still receiving $8,166 per month from retirement benefits and social security. *Id.* Husband's retirement funds were valued at approximately $1.2 million, and he decided how much to withdraw from the accounts based on online formulas and annuity tables. *Id.* If he continued his current level of withdrawals, his retirement funds would last until his mid-eighties, which corresponded to his life expectancy. *Id.*

Notably, despite Husband having the burden of proof, "he did not produce any evidence of his monthly expenses in an effort to demonstrate an inability to pay his

current level of alimony." *Id.* The limited evidence he presented regarding his expenses showed that his current monthly income enabled him to pay Wife's alimony and all of his expenses without going into debt. *Id.* He was paying the bulk of the household expenses for himself and his new wife, who was 49 years old and had accepted a voluntary buyout enabling her to stop working during the same month as Husband. *Id.* When asked about his deposition testimony in which he estimated that he and his wife spend $1,500 per month on groceries, he responded,

> All right. You asked me a bunch of questions about expenses in the deposition.... And to be honest with you, I wasn't prepared to answer those because I only thought the only issue involved in this was the fact that my income had dropped while I was—a significant amount and the fact that my ex-wife had done nothing in terms of rehabilitation.

*Id.* at 261-62. Even at the modification hearing, Husband testified, "I would be guessing at what each expense is.... I couldn't break down exactly what my expenses are." *Id.* at 262. Although he testified to charging some expenses to credit cards, he was able to pay off those balances at the end of every month. *Id.* His expenses included considerable discretionary spending, and he was voluntarily paying off his daughter's student loan of $20,000. *Id.* at 261. Husband claimed to have "cut back" on some "social things," but he was still traveling to France every year. *Id.* at 262. We found that "Husband's lifestyle indicated that he had no trouble paying for luxuries in addition to meeting his obligations," and we concluded that he "still has the financial ability to pay Wife's current level of alimony in the sum of $2,870 per month." *Id.*

We also considered Wife's financial need for the current level of alimony. She was 69 years old at the time of the hearing in 2013, and her most recent full-time employment was four years earlier when she worked as a secretary at the ballet school, earning $22,728 per year. *Id.* The ballet school "let [her] go" when a new director was hired and brought in his own staff. *Id.* Wife had only minimal income since then, earning $3,585 in 2010; $1,023 in 2011; and $312 in 2012. *Id.* She had worked at a real estate company for $12 an hour but was replaced by someone with an accounting degree. *Id.* At the time of trial, she was working three to six hours per week at a yarn store. *Id.* She attributed her lack of meaningful employment to her advanced age, health issues, and her lack of education. *Id.* She had begun drawing social security benefits in the past year and was receiving around $1,150 per month. *Id.* Aside from her social security benefit, minimal paycheck, and alimony payment, she had no other source of income. *Id.* She had no savings and no retirement and said she did not really own anything besides thirty-year-old furniture and an old car. *Id.* at 262-63. Wife testified that she lived "[v]ery frugally" and was unable to afford vacations or other luxuries. *Id.* at 262. When asked if her monthly expenses had decreased since the last hearing, Wife said, "I can promise you it's less. I don't do anything extra." *Id.* at 263. She testified that some months she had a deficit, and some months she had a surplus, but she used any surplus to pay on a

$150,000 tax debt she owed to the IRS[3] or for attorney's fees from defending against Husband's petitions to modify "every couple of years." *Id.* She believed she would have to live with one of her children if her alimony was significantly reduced. *Id.* Considering all these facts, we concluded that Wife had continued financial need for her current level of alimony. *Id.* Even though her expenses had decreased somewhat, we said this did not warrant a further decrease in her alimony payment. *Id.* (citing *Richards v. Richards*, No. M2003-02449-COA-R3-CV, 2005 WL 396373, at *11 (Tenn. Ct. App. Feb. 17, 2005) ("Wife's frugality should not be held against her."); *Claiborne v. Claiborne*, No. C/A 744, 1988 WL 5684, at *2 (Tenn. Ct. App. Jan. 29, 1988) (declining "to penalize wife for being prudent and frugal")).

In sum, in *Malkin I*, we concluded that Husband's retirement did constitute a substantial and material change in circumstances, but we found that he failed to prove that the change in circumstances significantly diminished his financial ability to pay alimony or Wife's need for it. *Id.* "Despite Husband's retirement," we said, "he is financially able to continue to pay spousal support at pre-retirement levels." *Id.* We reiterated that "'[e]ven a material change of circumstances does not necessarily require a reduction of alimony, if the payor still has the ability to pay the support awarded and the need of the payee has not diminished.'" *Id.* (citing *Willet v. Taeubel*, No. E2014-00364-COA-R3-CV, 2014 WL 5812338, at *8 (Tenn. Ct. App. Nov. 10, 2014)). We reversed the trial court's reduction of alimony to $1,035 and reinstated the previous obligation of $2,870 per month. *Id.* We held that if Husband had been paying $1,035 during the pendency of the appeal, Wife was entitled to recover the difference between what Husband actually paid and what he would have owed if the obligation remained at $2,870. *Id.*

The Tennessee Supreme Court denied Husband's application for permission to appeal on July 21, 2015. On April 15, 2016, Husband filed his fourth petition to reduce or terminate his alimony in futuro obligation. After reciting this Court's findings in *Malkin I*, the petition alleged that Husband had experienced "a substantial decrease in his income since his retirement and an increase in expenses," including "significant credit card debt pursuant to the reinstatement of alimony in the amount of $2,870.00." He alleged that he was now incurring several expenses that were "either in addition to, or in excess of the expenses beginning in December 2013, including, but not limited to health insurance, increased out of pocket medical expenses, life insurance premium, auto payments, and accountant fees." Husband also alleged that Wife had "a long history of being underemployed, or not being employed at all," when she had the ability to earn an income.

Wife filed a motion to dismiss pursuant to Tennessee Rule of Civil Procedure

---

[3] Wife went four years without filing tax returns while she was receiving alimony but perhaps not employed. She began filing returns in 2007. However, she had accumulated a substantial tax debt.

12.02(6), asserting that Husband "cannot state a claim because he cannot show a substantial and material change in circumstances since the last decree." Wife argued that Husband was required to allege a substantial and material change in circumstances occurring since the last order in *Malkin I* became final, but instead, he relied "almost entirely on matters already litigated in the previous action." She argued that Husband could not rely on his retirement as a change in circumstances because that issue was already litigated in *Malkin I*. Wife contended that Husband's only allegation of a change, aside from the issue of retirement itself, was that his expenses had increased since the last hearing, but she suggested that his expenses were voluntarily assumed obligations and did not constitute a "material" change in circumstances. After a hearing, the trial court entered an order denying Wife's Rule 12 motion.

Thereafter, Wife filed her own petition for modification seeking to increase the alimony award. She alleged that Husband's income had actually increased since the last modification hearing in 2013, and she further alleged that the aggregate value of his assets had increased, increasing his ability to pay. Wife alleged that her own income had remained approximately the same while her expenses had increased. Wife alleged that Husband's "litigiousness and constant bringing of petitions to modify" had caused her to incur attorney's fees almost continuously since the last hearing in 2013. She claimed that she was not enjoying a lifestyle reasonably comparable to Husband's lifestyle and asked the court to increase her alimony award by an unspecified amount. Husband filed a response in which he admitted that Wife did not have a lifestyle comparable to his, but he claimed this fact was due to Wife's own lack of initiative.

The trial court heard testimony over the course of two days in November and December 2017. At the outset of the hearing, counsel for Husband argued that the opinion of this Court in *Malkin I* established "several things, which are res judicata." He pointed to this Court's findings that Husband's retirement was reasonable, that his annual income had dropped to $98,000, and that Wife had begun receiving social security benefits. Husband's counsel suggested that these facts had already been found by the Court of Appeals to constitute substantial and material changes of circumstances. In response, Wife's counsel argued that res judicata applied, but in a different manner. She pointed to this Court's finding that "[d]espite Husband's retirement, he is financially able to continue to pay spousal support at pre-retirement levels." *See Malkin I*, 475 S.W.3d at 263. Wife's counsel argued that Husband was required to demonstrate a change in circumstances occurring since the last hearing in December 2013 (at the trial level in *Malkin I*). She suggested that Husband's financial situation had improved since the date of the last hearing while Wife's had deteriorated.

At the time of the hearing on the fourth petition, in late 2017, Wife was 73 years old, and Husband was 71. Husband testified that he was no longer practicing law, and his license was inactive. To briefly recap, during the December 2013 hearing in *Malkin I*, Husband had testified that he officially closed his law office on March 1, 2013, and that

- 10 -

his only sources of income were from social security and retirement, totaling around $98,000 per year. However, his tax returns for the years since then indicated that his income was more than $98,000. For 2014, he received a W2 from his law practice showing an additional $65,000 in wages. He testified that he had received around $40,000 in attorney's fees on outstanding cases that he had sent to other attorneys upon his retirement. In addition, he received some refunds on court costs, totaling no more than $5,000. Husband also received some income for mediations of around $2,000 per year. However, Husband insisted that all of these sources of income had since ended.

Unlike the situation in *Malkin I*, at this hearing, Husband presented evidence of his expenses. However, his evidence was not very specific. He testified that he gives $3,500 to his wife every month to pay "household expenses." He said this covers his contribution toward the mortgage, home insurance, car insurance, utilities, cable, telephone, a housekeeper, laundry, periodicals, "just anything and everything." Husband testified that his wife contributes at least $1,500 to the household expenses as well. Husband's home was appraised at around $270,000, but he did not know the balance owed on the mortgage, nor did he know the exact amount of the monthly payment, although he estimated that it was around $1,500 to $1,600. Husband owed no debt on his vehicle. He acknowledged the possibility that he and his wife spend $10,000 or $12,000 per year dining out at restaurants and insisted that he simply did not know the amount. He had a credit card balance of about $6,000.

Husband testified that his expenses had increased since his retirement because he had previously operated as a professional corporation and was able to take certain expenses as business expenses, but now, he was paying those expenses as personal expenses. He also testified that his medical insurance expense had changed since the last hearing in December 2013 because he was previously covered by his wife's policy through her employer, and since she had left that employer, he had procured supplemental insurance.

Husband's retirement funds had increased in value since the last hearing, from $1.2 million to $1,685,192. Every year, he purchased season tickets to the Memphis Grizzlies games, but he shared the cost with two other individuals. He made charitable contributions to a synagogue, the United Way, Boys Club, Boys Town, the American Heart Association, and the American Cancer Association. Husband acknowledged that he was still traveling to France every year, just as he had for the past twenty years. He and his wife were there for two and a half weeks earlier in the year, and in 2015, they were there even longer. He emphasized that he purchases economy-class flight tickets and rents an economy car for travel while he is in France, and his wife shares some of the expenses. He testified that he travels to a small village in France, where he rents an apartment and eats at casual restaurants.[4]

---

[4] Husband was critical of this Court's discussion of his yearly trips to France in *Malkin I*, stating,

- 11 -

Wife was living in an apartment, just as she was at the time of the last hearing. However, she had recently moved from a one bedroom apartment to a two bedroom apartment in the same building after the birth of her first grandchild, whom she was babysitting two to three days per week. Wife explained that she simply did not have room for a crib and space to entertain a child in her one bedroom apartment. Her rent had increased from $875 per month to $1,275 per month (including utilities) because of the move. However, the move allowed her to stop paying a monthly fee for a storage unit.

Wife testified that she does not have any money left at the end of each month. She still owed over $100,000 to the IRS and was paying $100 per month toward her tax debt. Wife owned a twelve-year-old car and the furniture she received at the time of the divorce, and she had approximately $4,000 in her bank accounts because she had just received Husband's alimony payment for the month.

After *Malkin I*, Wife had received a lump-sum payment of over $30,000 from Husband, representing the amount Husband owed due to the reinstatement of his previous alimony obligation. Wife had deposited $28,000 of that sum into an escrow account with her attorney. Wife testified that she did not want to spend the money because she knew she would be going back to court. Wife had been using the funds to pay her attorney's fees, and she had made a few withdrawals to "get through the month," but she had approximately $10,000 remaining in the account at the time of trial.

Wife's most recent employment was in 2016, when she worked as a driver for Uber and Lyft, providing transportation on an on-call basis to people who requested the service. However, she stopped working as a driver because she had a "bad back," which made it difficult to sit in her small car. Wife testified that she had an x-ray approximately two months before trial, which revealed that she had a bulging disc and that the "gel" was gone between two of her vertebrae. She had received nerve blocks and was attending physical therapy sessions. She continued to drive occasionally for some elderly residents in her building, and they sometimes paid her, for an average income of about $200 per month. She did not receive any compensation for babysitting her grandchild. Wife was receiving social security benefits of approximately $1,270 per month, in addition to her alimony payment of $2,870 per month.

Wife testified that she was unable to produce the underlying documents supporting her recent tax returns because her accountant, who previously had possession of the documents, had been arrested and was still in jail. Her 2014 tax return listed $10,906 in gross income from secretarial services, which Wife testified was likely from the yarn store where she had worked in the past, although she could not recall exactly. The 2014

"And the Court of Appeals picked up on that. They mentioned it in their order having no idea where I was going, obviously not realizing that France consist[s] of other cities other than Paris."

tax return also listed approximately $23,000 in business expenses on a schedule C profit and loss statement. Wife testified that she had no idea where that came from and could not explain it because she simply signed what her accountant prepared without reading it. She said, "I don't understand taxes." Wife's 2015 tax return similarly indicated that she earned approximately $5,000 working as a driver but that she had $46,000 in work-related expenses. Wife again testified that these numbers did not make sense to her.[5]

At the conclusion of the testimony, the trial judge announced his oral ruling as follows:

> Well, the Court has listened to all of the elegant [sic] arguments of both sides, considered all the pros and cons as it relates to the predicament of these parties. In accordance of the opinion considering all the facts and evidence that's been presented that the amount of the alimony should be reduced to $2000 a month for the remainder of the period that [Husband] had agreed to compensate [Wife] and I'll direct the attorneys to prepare the appropriate order, $2000 a month alimony effective immediately.

On January 29, 2018, the trial court entered a combined order on both petitions to modify. The order simply stated that Husband's petition was well taken, while Wife's was not, and therefore, Wife's petition was dismissed. The order reduced Husband's alimony obligation to $2,000 per month effective December 2017. The order included no findings of fact or conclusions of law but incorporated the oral ruling above.

Husband filed a motion to alter or amend, asking the court to modify its decision by making the reduction in alimony retroactive to the date of filing of his petition in 2016. He also asked the trial court to reduce the amount to $1,400 per month, which he claimed would be "consistent with the previous judgment modifying alimony, wherein this Honorable Court found that [Husband] had a 60% decrease in income and the Court of Appeals found the Petitioner had a 56% reduction in income." Additionally, Husband suggested that because Wife was no longer working for Uber and Lyft, she would be saving $30,000 to $40,000 per year for the expenses she previously claimed on her tax returns.

Wife also filed a motion to alter or amend and a motion for findings of fact and conclusions of law. She noted that the original order contained no reasoning to explain the court's decision to reduce the alimony obligation from $2,870 to $2,000 per month. She asked the court to increase the alimony award to $4,100 per month rather than decrease it because Husband's income had been more than expected at the last hearing, his retirement assets had increased in value, and she still needed alimony. She also

---

[5] Both parties testified that they had filed their 2016 tax returns, but neither party's 2016 return was introduced at trial.

- 13 -

sought an award of attorney's fees, claiming that she was expending her spousal support defending against Husband's efforts to reduce or terminate his obligation.

The trial court entered an order directing both parties to file proposed findings of fact and conclusions of law. On June 8, 2018, the court entered a six-page "Findings of Fact and Conclusions of Law on Petitions to Modify Alimony."[6] For reasons that will be discussed in greater detail below, the trial court further reduced Husband's alimony obligation, to $1,300 per month, and it made the reduction retroactive to the date of filing in 2016. The parties were ordered to pay their own attorney's fees. On June 22, 2018, the trial court entered a separate written order incorporating by reference the "Findings of Fact and Conclusions of Law" and stating that Husband's alimony obligation was reduced to $1,300 per month retroactive to April 1, 2016.

Wife timely filed a notice of appeal. Wife also filed a motion for stay of execution pending appeal. The trial court entered a subsequent order ruling that Husband would pay $1,300 per month in alimony pending appeal, and the court found that he was entitled to a judgment against Wife for $28,350 for overpayment of alimony during the course of the proceedings. However, the court ruled that Husband could not execute on the $28,350 judgment against Wife until the appeal was resolved.

## II. ISSUES PRESENTED

Wife presents the following issues for review on appeal:

1. Whether the trial court erred when it denied Wife's Rule 12.02(6) motion to dismiss;

2. Whether the trial court erred in granting Husband's petition to modify, denying Wife's petition to modify, and determining the amount of alimony in futuro Husband should be required to pay;

3. Whether Wife should be awarded her attorney's fees both at trial and on appeal.

For the following reasons, we reverse and remand for further proceedings.[7]

---

[6] Wife suggests on appeal that the trial court adopted Husband's proposed findings of fact and conclusions of law "essentially wholesale." However, the record before us does not contain a copy of Husband's proposed findings to enable us to make that determination.

[7] We note that the transcript from the 2017 hearing reflects that several exhibits were introduced. At the conclusion of the hearing, the trial judge and the attorneys discussed the fact that the court reporter would "hold the exhibits" until the time period for an appeal elapsed. The exhibits do not appear in the record on appeal. This Court contacted the chancery court clerk and was informed that no exhibits were ever filed in the clerk's office. As a result, we have proceeded to review the record as presented to this Court. Both attorneys obviously reviewed the record on appeal when preparing their briefs and citing to

## III. DISCUSSION

### A. *Alimony Modification*

As we explained in *Malkin I*, an award of alimony in futuro is intended to provide support to an economically disadvantaged spouse on a long-term basis until the death or remarriage of the recipient. 475 S.W.3d at 257. Such an award is appropriate when a spouse "is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse[.]" Tenn. Code Ann. § 36-5-121(f)(1). However, it "may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A). The party seeking modification has the burden of proving that a substantial and material change in circumstances has occurred. *Malkin I*, 475 S.W.3d at 258. Whether that party has sufficiently demonstrated a substantial and material change in circumstances is in the sound discretion of the trial court. *Id.*

### 1. Res Judicata

Initially, the parties dispute on appeal how we should determine the existence of a change in circumstances. Husband takes the position that the existence of a change in circumstances "has already been adjudicated" in *Malkin I*. Husband notes that in *Malkin I*, this Court found that his retirement was a substantial and material change in circumstances. Because the reversal in *Malkin I* was based on Husband's failure to prove that a modification was warranted, under the second prong of the analysis, he argues that "[t]he change in circumstances established in *Malkin I* is res judicata and should be taken as fact for the purposes of establishing same for the case at bar."

In response, Wife argues that Husband cannot rely on his retirement as a substantial and material change in circumstances, again, because that fact was litigated in *Malkin I*, wherein this Court concluded that Husband was financially able to continue to pay spousal support at pre-retirement levels despite his retirement. Wife suggests that Husband must now demonstrate a change in circumstances occurring after the last order in *Malkin I* became final following our decision on appeal.

We conclude that neither of these positions is entirely correct. Res judicata "'bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit.'" *Napolitano v. Bd. of Prof'l Responsibility*, 535 S.W.3d 481, 496 (Tenn. 2017) (quoting

the record, and neither mentioned the missing exhibits or made any attempt to locate them.

*Creech v. Addington*, 281 S.W.3d 363, 376 (Tenn. 2009)). The doctrine is intended "'to promote finality in litigation, prevent inconsistent or contradictory judgments, conserve legal resources, and protect litigants from the cost and vexation of multiple lawsuits.'" *Id.* (quoting *Creech*, 281 S.W.3d at 376).

With respect to alimony, "'[a] trial court's final decree fixing alimony [] is res judicata as to all circumstances in existence at the time of the entry of said decree.'" *Wilson v. Wilson*, No. M2003-02261-COA-R3-CV, 2005 WL 856082, at *5 (Tenn. Ct. App. Apr. 13, 2005) (quoting *Watts v. Watts*, No. 01-A01-9011-CH-00406, 1991 WL 93780 at *2 (Tenn. Ct. App. Jun. 5, 1991)). This Court has also applied the doctrine of res judicata in the context of serial alimony modification proceedings. For instance, in *Brown v. Brown*, 29 S.W.3d 491, 492 (Tenn. Ct. App. 2000), the parties divorced in 1989, and the wife was awarded alimony until her death or remarriage. She remarried in 1993, but the marriage was annulled shortly thereafter. *Id.* From 1993 to 1996, the husband filed several petitions to reduce or terminate his alimony obligation on various other grounds. *Id.* In 1998, he filed another petition to eliminate his alimony obligation, arguing, for the first time, that Wife's 1993 marriage obviated his alimony obligation. *Id.* at 493. We held that "[b]ecause the husband failed to seek termination of his alimony obligation on this ground in any of the previous multiple legal proceedings between the parties, . . . this current challenge is prohibited by the doctrine of res judicata." *Id.* at 492. We explained,

> 'The doctrine of res judicata is based on the principle not only that the same parties in the same capacities should not be required to litigate anew a matter which might have been determined and settled in the former litigation, but that litigation should be determined with reasonable expedition, and not be protracted through inattention and lack of diligence. *Jordan v. Johns*, 168 Tenn. 525, 79 S.W.2d 798 (1935).
>
> The rule requires that the whole subject of the litigation be brought forward by the parties, and the judgment concludes all matters, whether of action or defense, legally pertaining to that subject which, by the exercise of reasonable diligence, might have been brought forward. *Sale v. Eichberg*, 105 Tenn. 333, 59 S.W. 1020, 52 L.R.A. 894 (1900).
>
> ...
>
> This Court cannot accept the argument of appellant that, by disclaiming or failing to present a particular fact or theory supporting his action, a plaintiff may thereby reserve and preserve the disclaimed and unpresented fact or theory as an "ace in the hole" to be used as a ground for a second lawsuit based on such ground.'

*Id.* at 496 (quoting *McKinney v. Widner*, 746 S.W.2d 699, 705 (Tenn. Ct. App. 1987)). To consider the husband's argument "at [that] point in the parties' litigious history" would condone piecemeal litigation at the whim of the parties. *Id.*

- 16 -

This Court has repeatedly recognized that "'[w]here the court has decided one petition for modification, the order entered in that proceeding is res judicata, and a second petition for modification thus cannot be entertained unless it can be shown that there has been a substantial change of circumstances since the earlier decision was made.'" *Curtis v. Curtis*, No. M1999-00721-COA-R3-CV, 2001 WL 310641, at *5 (Tenn. Ct. App. Apr. 2, 2001) *perm. app. denied* (Tenn. Sept. 10, 2001) (quoting 24A Am.Jur.2d *Divorce and Separation* § 822 (1998)); *see also Cooper v. Cooper*, No. E2001-00716-COA-R3-CV, 2002 WL 445068, at *6 (Tenn. Ct. App. Mar. 22, 2002) (quoting *Jones v. Jones*, 784 S.W.2d 349 (Tenn. Ct. App. 1989)) ("'[O]ne cannot maintain a second petition for modification unless it can be shown that since the entry of the order on the first petition for modification there has been a substantial change of circumstances.'"). The "change in circumstances must have occurred since the last order regarding alimony payments, because the earlier order is considered res judicata concerning all circumstances up to that time." *Curtis*, 2001 WL 310641, at *5; *see Hubbard v. Hubbard*, No. 03A01-9603-CV-00108, 1996 WL 563890, at *1 (Tenn. Ct. App. Oct. 1, 1996) (considering only evidence tending to show a substantial and material change in circumstances since the date of the most recent post-divorce modification order regarding alimony).

Accordingly, in the event that a previous petition for modification has been *denied*, the petitioner seeking a later modification is "required to allege a substantial and material change in his circumstances since the order denying his first petition for modification of alimony." *Curtis*, 2001 WL 310641, at *6. Applying these principles to the case before us, we conclude that when Husband filed his fourth petition to modify, he was required to allege and prove that a substantial and material change in circumstances had occurred since December 2013, when the trial court held the hearing and entered its order on his third petition for modification. However, we find no support for Wife's suggestion that the date should be measured from 2015, after the appeal was concluded in *Malkin I* and the application for permission to appeal was denied.[8] In *Malkin I*, this Court was not considering the circumstances as they presently existed at the time of our opinion in 2015. We were considering the evidence presented at the December 2013 hearing and the findings in the trial court's order from December 2013. As previously noted, res judicata bars a second suit between the same parties "with respect to all issues which were or could have been litigated in the former suit." *Napolitano*, 535 S.W.3d at 496.

---

[8] As we explained in *Gotten v. Gotten*, 748 S.W.2d 430, 431 (Tenn. Ct. App. 1987),

The appellate court acts only upon the record in the case in the trial court and when the appellate court enters an order modifying the trial court order it is doing what should have been done in the first instance. The modification of the trial court order should be effective as of the date of the trial court order. Therefore, . . . a judgment of the appellate court reversing or modifying the trial court judgment providing for periodic payments of alimony [] is effective as of the date of the trial court judgment, unless the appellate court judgment specifies otherwise.

- 17 -

Events occurring in 2014 and 2015 were not litigated and could not have been litigated in *Malkin I*.

This Court rejected a similar theory in *In re E.J.M.*, 259 S.W.3d 124, 135 (Tenn. Ct. App. 2007), in the context of serial petitions to modify custody. While one order was being reviewed on appeal, the father filed a second petition to modify. *Id.* We explained that this Court's "decision in *E.J.M. I* was 'final and conclusive upon all the facts and conditions which existed' at the time of the order that was the subject of that appeal." *Id.* However, the appellate court's decision in *E.J.M. I* did not prevent the trial court from issuing orders "addressing new facts and changed conditions which arose after the issuance of the order being appealed." *Id.*

Likewise, in this case, our decision in *Malkin I* was only "'final and conclusive upon all the facts and conditions which existed' at the time of the order that was the subject of that appeal." *See id.* Husband was therefore required to show a change in circumstances occurring since December 2013.

## 2. Wife's Motion to Dismiss Husband's Petition

This brings us to Wife's first issue on appeal. Wife argues that the trial court should have granted her motion to dismiss pursuant to Tennessee Rule of Civil Procedure 12.02(6) due to Husband's failure to sufficiently allege a substantial and material change in circumstances aside from the previously litigated issue of his retirement. In *Curtis*, this Court affirmed the dismissal of a husband's second petition for modification on the basis that it did not sufficiently allege a substantial change of circumstances since the court's order denying his first petition for modification. 2001 WL 310641, at *6.

A Rule 12.02(6) motion "'challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence.'" *Estate of Haire v. Webster*, 570 S.W.3d 683, 690 (Tenn. 2019) (quoting *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011)). "The relevant and material allegations of the complaint are taken as true, and the plaintiff is afforded the benefit of all reasonable inferences that may be drawn from the allegations." *Id.* (citing *Webb*, 346 S.W.3d at 426; *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010)).

Husband's fourth petition to modify recited the findings from *Malkin I* and contained the following allegations:

> 5. Your Petitioner would show now that he has had a substantial decrease in his income since his retirement and an increase in expenses as well as significant credit card debt pursuant to the reinstatement of alimony in the amount of $2,870.00.
> 6. Petitioner now incurs several expenses that are either in addition to,

or in excess of the expenses beginning in December 2013, including, but not limited to health insurance, increased out of pocket medical expenses, life insurance premium, auto payments, and accountant fees.

7.      Further, your Petitioner would show that the Respondent has a long history of being underemployed, or not being employed at all when she has had no mental or physical defects that would prevent her from earning a substantial income. In fact, she has been employed, has made investments, and has otherwise shown an acumen to earn money except when she fears that her alimony may be reduced, or terminated.

Clearly, Husband's allegation regarding Wife's "long history" of underemployment did not allege a material change in circumstances. Husband had been making this allegation since his first petition to modify.[9] We likewise conclude that Husband could not rely on his decrease in income due to his retirement, as that issue was already litigated in *Malkin I*. However, Husband did allege, in this petition, that he was now incurring several expenses that were in addition to or in excess of his expenses "beginning in December 2013," which was the date of the last hearing and the trial court's order in *Malkin I*. Thus, his allegations were not entirely based on issues previously litigated, and his petition was not subject to dismissal for failure to state a claim.

### 3.    Husband's Petition to Modify

#### a.    Substantial and Material Change in Circumstances

We now consider the merits of Husband's petition to reduce or terminate his alimony obligation. In the trial court's findings of fact and conclusions of law, it referenced the alimony statute and stated that an award of alimony in futuro can only be modified "upon showing of financial [sic] or material change of circumstances." However, the court did not specify exactly what it deemed to be a material change in circumstances. It is not clear from the order whether the trial court accepted Husband's argument that a substantial and material change in circumstances had already been established by *Malkin I*. In the context of its factual findings, the trial court found that Husband's income had declined to $98,000 per year at the time of the December 2013 hearing, but that he was still employed by his "law office professional corporation" at that time, and it was paying most of his expenses as he was "winding down this practice." The order stated that Husband filed his present petition to modify on the basis that his expenses had increased because he is no longer employed by his professional corporation. The court found that Husband had retired from the practice of law and that his license was now inactive. Although the order does not discuss Husband's specific

---

[9] *See, e.g., Jarman v. Jarman*, No. M2017-01730-COA-R3-CV, 2018 WL 5778811, at *4 (Tenn. Ct. App. Oct. 31, 2018) ("Wife did not have a fulltime job in 2003 [when the last order was entered]; therefore, her lack of fulltime employment now cannot serve as a material change.")

expenses or any related monetary figures, it states that "none of the current income and expenses of [Husband] reflected on his affidavit of income and expenses filed in this cause have been controverted by [Wife]." In its discussion of the statutory factors relevant to an award of alimony, the order simply states that the "primary motivating factors" for the court's decision were "1) the uncontroverted increase in the expenses of [Husband]; [and] 2) the complete and utter failure of maintaining any type of financial responsibility of [Wife] since the parties have been divorced."[10]

From our review of the record, we cannot agree with the trial court's implicit conclusion that Husband's "increase" in expenses constituted a *material* change in circumstances. During the brief hearing in *Malkin I* in December 2013, Husband testified that he had retired and "officially" closed his law office on March 1, 2013. He testified that he was no longer practicing law and that he was no longer renting office space. When asked if he did "any law practicing now," Husband said no. He said he would like to do mediation work but that he had not been contacted about one "in forever." He insisted that his decision to retire was final and would not change. He testified that his sole sources of income were social security and his retirement funds. Husband's evidence regarding his expenses was very sparse. He testified that his current wife had recently accepted a voluntary buyout from her job, and he was previously insured by her group plan but currently "on COBRA." That coverage was expected to end the following month, and Husband had already applied for "Part B" coverage. As such, Husband said, "I am going to have an expense in health insurance that we just discussed that I haven't had previously." He also testified that his tax obligation would be different that year because in the past he had paid quarterly payments, but he was no longer "paying in." When asked about his precise expenses, however, Husband conceded that he "couldn't break down exactly what my expenses are" and "would be guessing at what each expense is."

At the hearing on this petition, in November 2017, Husband did present evidence of his expenses. He testified that he gives his current wife $3,500 per month for "household expenses," but that he had been doing so since they married, and this expense had not changed. The "increased expenses" Husband claimed were (1) medical expenses, and (2) expenses that he previously paid through his professional corporation but that he now paid individually.

First, regarding the medical expenses, Husband testified that his medical insurance situation had changed since the last hearing in December 2013. He claimed that "when we were here last, my wife was still and I was, too, under her health insurance at [a bank]. So I didn't have any of these expenses then. It was a much better insurance situation." Husband testified that he had to purchase supplemental insurance costing

---

[10] Again, the trial court's finding about Wife's financial responsibility "since the parties have been divorced" does not constitute a material change in circumstances since the last hearing.

$245 per month and also had out-of-pocket expenses averaging $150 that he did not have before. On cross-examination, Wife's attorney presented Husband with his testimony from the 2013 hearing, indicating that his wife had already left her job at that time, and he was already aware of the impending cost of acquiring additional insurance. Husband then said, "I stand corrected."

"To constitute a *material change*, the change must occur *after* the entry of the decree to be modified and it must have been *unanticipated*." *Jekot v. Jekot*, 362 S.W.3d 76, 83 (Tenn. Ct. App. 2011) (emphasis in original). From our review of the record, Husband's increased expenses for medical insurance and out-of-pocket costs do not constitute material changes in circumstances since the last proceeding in December 2013, as they were circumstances already existing or anticipated at that time.

The second category of expenses that Husband described were expenses he previously paid through his professional corporation but was presently paying individually. Husband explained that he previously operated as a professional corporation and was able to "take certain expenses as business expenses" and write them off as corporate deductions, but since he had dissolved his professional corporation, he was now paying those expenses from his personal account rather than his corporate account. Simply stated, Husband said that "[q]uite a bit of what's now personal expenses was business expenses." For instance, Husband listed a current expense for life and long-term care insurance and acknowledged that this "expense was there" before, but it had previously been paid by his corporation. He explained, "I was still a PC, so that wasn't a personal expense to me." He went on to testify that other expenses he previously paid from his corporate bank account were now paid by him personally, such as accounting expenses, income taxes, and expenses related to his automobile. He said, "That was all paid for with corporation money." Husband included a credit card expense of $3,507 on his income and expense statement and said this sum included the expenses that he previously paid through his corporate account. He said "there's a lot of expenses that were corporate that are at least a thousand dollars worth if not more that now [are] personal expenses of mine." Husband's brief on appeal confirms that he now pays these expenses "due to his inability [to] claim these expenses as deductions for his law practice since he has retired." As his attorney put it during oral argument before this Court, Husband's "expenses have increased since the last petition and appeal due to his retirement from the practice of law."

Again, as the petitioner, it was Husband's burden to prove a material change in circumstances. *Wiser*, 339 S.W.3d at 12. For purposes of alimony modification, a change in circumstances is considered to be "material" when the change (1) occurred since the entry of the decree ordering the payment of alimony, and (2) was not anticipated or within the contemplation of the parties at that time. *Bogan*, 60 S.W.3d at 728; *see also Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999) ("the change in circumstances must not have been foreseeable"). Husband was required to demonstrate

that these expenses were "unanticipated or unforeseen when alimony was set" the last time. *Jekot*, 362 S.W.3d at 84. During the 2013 hearing, the parties litigated the issue of Husband's recent retirement, whether it was "bona fide," and how Husband's income was impacted by his retirement. For the most part, they failed to discuss how Husband's expenses would be affected by his retirement. However, that does not mean that Husband gets a second chance to do so in this proceeding. Husband must now prove a material change in circumstances occurring since the last proceeding. Husband has not demonstrated that the dissolution of his professional corporation after his retirement, and the resulting inability to continue paying his expenses through his business account, were unanticipated changes in circumstances. These were not new expenses for Husband that were unknown or unforeseeable when alimony was addressed shortly after his retirement. He is still paying the same expenses, but from a different account. Husband failed to prove that this was a material or unanticipated change in circumstances.

Aside from the two "primary motivating factors" discussed above, most of the other facts discussed by the trial court pre-date the December 2013 order and would not constitute a material change in circumstances. However, the court did note that, since the last hearing, Wife had deposited in an escrow account the lump-sum arrearage payment she received from Husband as a result of this Court's reinstatement of his previous alimony obligation. The trial court was critical of this move and found it "apparent that the $1035 per month" Wife received pending the appeal in *Malkin I* "was adequate for her support." The court found that Wife "apparently has other sources of income and did not need the funds for her support." We cannot agree with these conclusions. Wife testified that she did need the money but that she did not want to spend it because she knew that Husband would file another petition to modify. As evidenced by this litigation, her prediction was exactly right. If anything, depositing the money with her attorney was a wise move. It does not constitute a material change in circumstances.

The trial court also noted that Wife's tax returns for 2013, 2014, and 2015 reflected business-related expenses of between $23,000 and $46,000. Because Wife was no longer working, the trial court found that she "will not incur these expenses in the future, thereby having a savings of a tremendous amount of money each year." We recognize that Wife could not explain these figures at the hearing, as her accountant was incarcerated, and Wife insisted that the numbers did not make sense to her. However, no evidence regarding these business-related expenses was ever presented at any of the previous hearings regarding alimony. They either did not exist or were not known to the parties. Thus, the previous alimony awards were not based on Wife having any such expenses. Moreover, by the time of trial on this petition, she was not working and did not have such expenses. Consequently, to the extent that these business expenses ever truly existed, they do not represent a material change in circumstances from the date of the last order to the most recent hearing.

Finally, the trial court found that Wife had not furnished "proper records to

document her income and expenses and therefore the court is without any evidence upon which to base an opinion, that she is in need of alimony in futuro in the amount of alimony presently being paid by [Husband]." It is not clear from the trial court's statement whether it was faulting Wife for her inability to obtain underlying documentation from her accountant. Wife testified regarding her income and expenses, she submitted an affidavit of income and expenses, and her tax returns, bank statements, and social security earnings statement were introduced at trial. In any event, however, it was not Wife's burden to demonstrate that she was still "in need of alimony in futuro in the amount of alimony presently being paid by [Husband]." The burden is on the obligor seeking reduction or termination of the award, and if there has been a change in the recipient's need that would support reduction or termination, the obligor has the burden of establishing that change. *Jekot v. Jekot*, 2018 WL 4677676, at *5. This finding by the court does not establish a change of circumstances or any other basis for reducing Husband's alimony obligation.

Because Husband failed to prove a substantial and material change in circumstances occurring since December 2013, we reverse the trial court's order reducing the alimony award from $2,870 to $1,300 per month, and we vacate the judgment the trial court entered against Wife for Husband's overpayment while this case was pending in the trial court.

### 4.    Wife's Petition to Modify

### a.    Substantial and Material Change in Circumstances

We now consider Wife's contention that the trial court erred in denying her separate petition seeking an increase in the alimony obligation to $4,144 per month. Before the trial court, Wife's petition to modify alleged that Husband's income and the aggregate value of his assets had increased, and while her income had remained the same, her expenses had also increased. In her brief on appeal, Wife argues that Husband had a greater ability to pay in 2017 than in 2013 because his income was expected to be $98,000 after retirement, and he actually received significantly more income in 2014 and 2015. She suggests that this increase in income should serve as a basis to increase alimony. We disagree. Husband testified that he received some residual income in the years after closing his law practice from reassigned cases, refunds of court costs, or mediations. However, he testified that this residual income had ended by the time of the hearing. The record contains no evidence to suggest that Husband was receiving this additional income at the time of trial or that it would continue in the future. "[A] change in circumstances is considered to be 'substantial' when it significantly affects either the obligor's ability to pay or the obligee's need for support." *Bogan*, 60 S.W.3d at 728. Husband's temporary increase in income during the two years after the last hearing, which had ended by the time of trial, does not serve as a substantial change in circumstances significantly impacting his ability to pay.

- 23 -

Next, Wife points out that the fair market value of Husband's retirement fund had increased since the last hearing. Again, this does not constitute a material change in circumstances. Wife presented no evidence to suggest that the increase in the fund's market value was unforeseen or unexpected.[11] Similarly, Wife points to Husband's lifestyle and claims that it weighs in favor of increasing her alimony obligation. From our review of the record, however, the parties' lifestyles are not markedly different than they were in 2013. At both hearings, the testimony centered around Husband traveling to France and dining out with his current wife, while Wife was living fairly frugally in an apartment. We discern no change in circumstances regarding the parties' lifestyles.

Finally, Wife notes that her expenses had increased. Again, she does not present any argument to suggest that her increase in expenses was unforeseeable. The only specific change in her expenses that Wife emphasizes in her brief on appeal is the fact that she is now paying attorney's fees "for yet another petition." However, Wife predicted that Husband would probably file another petition during the last hearing. Given the parties' history, this litigation was certainly not unforeseeable.

We conclude that Wife failed to prove a substantial and material change in circumstances occurring since the December 2013 order that would justify increasing the existing alimony obligation.[12] As a result, we reinstate the previous obligation of $2,870 per month. As in *Malkin I*, if Husband has been paying the reduced sum of $1,300 during the pendency of this appeal, Wife is entitled to recover the difference between what Husband actually paid and what he would have owed if the obligation remained at $2,870 per month.

## B.    *Attorney's Fees*

Finally, we consider Wife's request for an award of attorney's fees at the trial court level and on appeal. Wife claims that she incurred $14,426 in attorney's fees at trial, and she seeks a reasonable fee for appellate work. Wife argues that both awards are

---

[11] *See, e.g.*, *(Cooley) v. Cooley*, 543 S.W.3d 674, 685 (Tenn. Ct. App. 2016) (concluding that a professional's steady increase in income was not unanticipated and therefore not a material change); *Jekot*, 362 S.W.3d at 83-84 (concluding that the wife's receipt of rental income from a medical office building she was awarded in the division of marital property was not an "unanticipated or unforeseen" circumstance); *Seal v. Seal*, 802 S.W.2d 617, 621 (Tenn. Ct. App. 1990) (recognizing that stocks or bonds received in the division of marital property might produce income, and absent the husband establishing that the income was "unanticipated or unforeseen," the resulting income should not be a material change in circumstances).

[12] Wife's brief on appeal also suggests that the trial court "should have required Husband to insure his alimony obligation so that she is not left destitute if he predeceases her." However, she does not cite to any location in the record or any legal authority to develop any argument with respect to this issue. Therefore, we deem it waived.

warranted pursuant to Tennessee Code Annotated section 36-5-103(c).[13]   We discussed this statute in *Malkin I* and awarded Wife her attorney's fees pursuant to it:

> Tennessee Code Annotated section 36-5-103(c) provides for awards of "reasonable attorney fees incurred in enforcing any decree for alimony," in the discretion of the court.   Pursuant to this statute, a court may award attorney's fees to an alimony recipient who is forced to defend an action to reduce or terminate that alimony.  *Henderson v. Henderson*, No. M2013-01879-COA-R3-CV, 2014 WL 4725155, at *12 (Tenn. Ct. App. Sept. 23, 2014) (citing *Evans v. Evans*, M2002-02947-COA-R3-CV, 2004 WL 1882586, at *13-14 (Tenn. Ct. App. Aug. 23, 2004)); *see also Owens v. Owens*, No. M2012-01186-COA-R3-CV, 2013 WL 3964793, at *6 (Tenn. Ct. App. July 30, 2013) *perm. app. denied* (Tenn. Nov. 13, 2013) ("Reasonable fees may be awarded pursuant to § 36-5-103(c) in actions to enforce a decree for alimony, which has been interpreted as including the situation where an alimony recipient is forced to defend an action to reduce or terminate that alimony.").   The statute authorizes awards of attorney's fees incurred at trial as well as on appeal.  *Henderson*, 2014 WL 4725155, at *12.  The decision of whether to award attorney's fees incurred on appeal is a matter within the discretion of this Court.  *Yattoni–Prestwood v. Prestwood*, 397 S.W.3d 583, 597 (Tenn. Ct. App. 2012) (citing *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995); *Seaton v. Seaton*, 516 S.W.2d 91, 93 (Tenn. 1974)).  We have previously recognized that
>
> > "Alimony is only awarded in the first instance to an economically disadvantaged spouse who has a demonstrated need for the support.  Absent a showing in a modification proceeding that the need no longer exists, requiring the recipient to expend that support for legal fees incurred in defending it would defeat the purpose and public policy underlying the statute on spousal support.  Additionally, the possibility of being burdened with a former spouse's attorney's fees helps deter unwarranted or unjustified attempts by an obligor to evade or reduce an existing support obligation."
>
> *Henderson*, 2014 WL 4725155, at *12 (quoting *Evans*, 2004 WL 1882586, at *13).

Considering these observations, in addition to the nature of the

---

[13]   The statute was amended effective July 1, 2018, but the amendment applies "to actions commenced on or after that date." 2018 Tenn. Laws Pub. c. 905.

issues involved in the instant litigation, the respective financial positions of the parties, and Wife's success on appeal, we conclude it is appropriate to exercise our discretion to grant Wife's request for an award of her reasonable attorney's fees and expenses for appellate work. On remand, the trial court will set these fees.

*Malkin I*, 475 S.W.3d at 263-64.

In the present appeal, we again recognize the respective financial positions of the parties and Wife's success on appeal defending against Husband's petition to eliminate or reduce his obligation. We also note that this is the fourth modification proceeding instituted by Husband since the divorce, and only one of those four was partially successful. An award of Wife's attorney's fees at trial and on appeal will hopefully "deter unwarranted or unjustified attempts" by Husband in the future to evade or reduce his existing support obligation. *Henderson*, 2014 WL 4725155, at *12. On remand, the trial court should determine a reasonable attorney's fee for Wife's defense against Husband's petition to reduce or terminate his alimony obligation before the trial court and on appeal. Of course, Wife is not entitled to an award of attorney's fees incurred in unsuccessfully seeking an increase in the alimony award.

## IV. CONCLUSION

For the aforementioned reasons, the decision of the chancery court is hereby reversed, the previous alimony award is reinstated, both petitions for modification are dismissed, and this matter is remanded for further proceedings. Costs of this appeal are taxed to the appellee, Reed Lynn Malkin, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE

- 26 -